# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

SQUARE D COMPANY, )
        Plaintiff, )
         )
vs. )       Civil Action No. 06-459
         )
SCOTT ELECTRIC COMPANY, ET AL., )
        Defendants. )

## MEMORANDUM OPINION and ORDER

This matter is before the Court on the following: (1) Plaintiff's Motion for Rule to Show Cause and for Sanctions [DE 70] (hereinafter "motion for sanctions"), filed by Plaintiff Square D Company ("Square D") on June 1, 2007; and a (2) Motion for Protective Order [DE 82] (hereinafter "motion for protective order"), filed by Defendant Globe Electric Supply Co. ("Globe") on July 9, 2007. The Court will address each motion in turn.

## FACTUAL BACKGROUND[1]

Square D is a leading manufacturer and supplier of electrical distribution products for both consumer and commercial applications. Square D's direct sales are generally confined to certain national accounts and it does not sell to any unauthorized distributors. Docket No. 31, at ¶14 (hereinafter, "Amended Complaint"). One of Plaintiff's main brands, the QO® circuit breaker, has been counterfeited for many years and such counterfeits are highly sophisticated and "physically indistinguishable to the untrained eye from the authentic products." Am. Compl. at ¶16. The counterfeit breakers allegedly obtained from Defendants bear the SQUARE D® and QO® trademarks and overall appear to be genuine. *Id.* at ¶17. However, upon installation, the overall poor interior quality of these counterfeits becomes readily clear when a short-circuit or overload occurs and the

—————————————
[1] All background facts are taken from Plaintiff's Amended Verified Complaint.

components "fail catastrophically." *Id.* at ¶18. A catastrophic failure may be an explosion that could send molten metal and powerful blasts of energy toward any bystanders. *Id.*

Defendant Globe sells electrical components, including circuit breakers. Defendant Globe is not an authorized Square D distributor. *Id.* at ¶36. According to the Amended Complaint, Defendant Globe knowingly purchased counterfeit breakers from Defendant ABN and others for sale to customers in the United States. *Id.* at ¶37. In early 2006, Defendant Globe sold an undetermined number of counterfeit breakers to Defendant Scott. *Id.* at ¶38.

Square D alleges that because these counterfeit circuit breakers pose a significant health and safety risk, Defendants' knowing distribution and sale of the counterfeit products have caused irreparable harm to its reputation and good will. Further, Square D alleges that it has lost profits it would have earned through the sale of authentic Square D products but for the Defendants' unlawful distribution of counterfeit products. Plaintiff Square D seeks injunctive relief to stop Defendants' unlawful activity as well as damages related to lost profits and attorneys' fees.

## PROCEDURAL BACKGROUND

*1.*     *General procedural background*

On April 7, 2006, Plaintiff Square D commenced this lawsuit by filing a Verified Complaint for alleged violations of the Lanham Act, 15 U.S.C. §§ 1114(1) and 11125(a)(1), and the common law of the Commonwealth of Pennsylvania, alleging that Defendants Scott Electric Company ("Scott") and Bossert's Hardware and Sporting Goods Store ("Bossert"), unlawfully imported, distributed, and sold counterfeit Square D products thereby posing a serious threat to consumer safety. On June 1, 2006, Judge Thomas M. Hardiman granted an order for injunctive and other relief that is to remain in force until the parties mutually agree to the termination of the Order's

restrictions. On June 28, 2006, Judge Hardiman granted Plaintiff's Motion to Voluntarily Dismiss Bossert's Hardware, and dismissed said Defendant without prejudice or cost. (Docket No. 29). On June 29, 2006, Judge Hardiman granted Plaintiff's Motion for Leave to File Verified Amended Complaint, (Docket No. 30), which Square D filed that day, adding Defendants Edward Vaught d/b/a ABN Direct ("ABN") and Globe, (Docket No. 31).

On August 2, 2006, Defendant Scott filed a Cross-claim against Defendant ABN. (Docket No. 36).

On August 11, 2006, Square D filed Plaintiff's Motion for Entry of Agreed Order for Temporary Injunctive Relief against all Defendants, (Docket No. 37), which Judge Hardiman granted on August 21, 2006, (Docket No. 38). On October 17, 2006, Globe filed its Verified Answer, in which it denies all allegations asserted by Square D in its Amended Complaint and asserts one affirmative defense, namely that this Court lacks jurisdiction over it. (Docket No. 42). On October 30, 2006, Judge Hardiman denied as moot a Motion for Default Judgment against Defendant Globe, (October 30, 2006 minute entry), but granted a Motion for Default Judgment against Defendant ABN, permanently enjoining Defendant ABN from selling, marketing, or distributing counterfeit and authentic Square D products and ordering it to disgorge its profits from the sales of counterfeit products and to pay Square D's attorney fees and costs. (Docket No. 48).

On February 23, 2007, Judge Hardiman granted Plaintiff Square D's Motion to Compel, requiring Defendant Globe to fully respond to all interrogatories and requests to admit facts, make all of its inventory available for inspection, and pay Plaintiff Square D reasonable attorneys' fees in

the amount of $2,000.  (Docket No. 58).[2]

On March 5, 2007, Judge Hardiman granted Cross-Plaintiff Scott's Motion for Default Judgment against Cross-Defendant ABN and ordered Cross-Defendant ABN to pay $261,000 in liquidated damages as immediate judgment to Cross-Plaintiff Scott.  (Docket No. 62).

On March 9, 2007, the Court entered a modified discovery order, in which the Court ordered Globe (1) to produce documents responsive to Square D's production requests on or before March 16, 2007; (2) to produce its inventory of Square D products for inspection at its facility in Long Island, New York, on or before March 20, 2007; and (3) to serve its supplemental answers to interrogatories and requests to admit fact on or before April 3, 2007.  (March 9, 2007 minute entry).  In response, Defendant Globe produced documents, in particular a current printout of sales of Square D circuit breakers.  As a result, Plaintiff contacted Defendant Globe and informed it that it had violated the express language of the Agreed Consent Order by selling Square D circuit breakers.[3]

2.      *Procedural background as to the instant motions*

On June 1, 2007, Square D filed the instant motion for sanctions.  (Docket Nos. 70 and 71). On June 4, 2007, Globe filed a response to Plaintiff's motion for sanctions, in which it addressed its alleged violation of the August 21, 2006 Agreed Consent Order.  (Docket No. 72).[4]

On June 12, 2007, given Judge Hardiman's earlier Order, the Court entered an Order as to

---

[2]

More specifically, the Court directed Defendant Globe (1) to produce all responsive documents on or before March 5, 2007; (2) to fully respond to Plaintiff's interrogatories and requests to admit fact on or before March 5, 2007; and (3) to make all of its inventory available for inspection on or before March 13, 2007.

[3]

On April 6, 2007, the instant matter was reassigned to the undersigned Judge.

[4]

The contents of Globe's response is discussed in detail below.

4

Plaintiff's motion for sanctions, ordering Globe to (1) produce within seven days all documents relating to or otherwise reflecting its purchases and sales of Square D circuit breakers from January 1, 2003 through May 31, 2007; and (2) submit within fourteen days to an inspection by Square D of its inventory of Square D circuit breakers at Globe's offices, warehouses, storage containers or facilities as well as to a forensic inspection of its computer system. The Court also ordered Globe to pay Square D's reasonable attorney's fees and costs incurred in pursuing that motion and its previous efforts to secure Globe's compliance and instructed Plaintiff Square D to submit its fees and costs to the Court on or before June 22, 2007. Finally, the Court set Plaintiff's motion for sanctions for a hearing on July 3, 2007. (Docket No. 73).

On June 22, 2007, Square D filed an Affidavit of Elizabeth Keiley for Attorney's Fees and Costs in Accordance with the Court's Order of June 12, 2007, in which counsel for Square D requests total attorneys' fees incurred in securing Globe's compliance with discovery in the amount of $30,477.25. (Docket No. 74).

On June 26, 2007, upon motion from Defendant Globe, the Court reset the hearing on Square D's motion for sanctions to July 17, 2007. In addition, the Court ordered Globe to show cause by no later than July 9, 2007, as to why it should not be held in contempt of Court for failure to comply with the Order of Court dated February 23, 2007, which directed Globe to pay Plaintiff's reasonable attorney's fees and costs in the amount of $2,000 incurred in the preparation and presentation of its motion to compel. (Docket No. 78).

On June 28, 2007, Globe responded to the Court's Order to show cause, asserting that it had attempted to make arrangements with counsel for Plaintiff to pay the attorney's fees and costs in the amount of $2,000, but to no avail. (Docket No. 81).

On July 9, 2007, Globe filed the instant motion for protective order. (Docket No. 82). On July 16, 2007, Square D filed its Response to Motion for Protective Order. (Docket No. 83).

On July 17, 2007, the Court held a motion hearing during which it heard oral argument and received evidence as to the parties' respective pending motions. At the conclusion of the hearing, the Court took the motions under advisement until the parties concluded certain depositions and submitted transcripts thereto. In addition, the Court granted Square D leave to file under seal documentation regarding attorney's fees and costs in relation to its motion for sanctions. (Docket No. 84). Also on July 17, 2007, the Court entered an Order extending deadlines. (Docket No. 85).

On September 21, 2007, Square D filed a Summary of Relevant Portions of Globe Depositions Pertinent to Plaintiff's Motion for Rule to Show Cause and for Sanctions.[5] (Docket No. 86). On the same day, the Court received the deposition transcripts of Julius Rosenzweig (majority owner and President of Globe, deposed on July 18, 2007), Avi Mandel (employed by Globe in sales, deposed on July 19, 2007), and Joel Mandel (owner and Vice-President of Globe, deposed on August 21, 2007). On October 3, 2007, the Court *sua sponte* issued an Order instructing both Square D and Globe to file a supplement to their respective pending motions, i.e., motion for sanctions and motion for protective order, with a brief notice indicating whether said motions remain viable and require a ruling from the Court, in particular as to the relief requested. (Docket No. 89).

On October 10, 2007, Square D filed a Notice regarding Status of Pending Motions, in which

---

[5]

While not particularly relevant as to the instant motions, on October 2, 2007, Defendant Scott filed a Motion for Leave to Amend Cross-Claim. On October 15, 2007, Globe filed its Opposition to Motion to Amend Cross-Claim. On October 16, 2007, the Court denied without prejudice Defendant Scott's motion. However, the Court ordered Defendant Globe to provide portions of Kenneth Vojnik's deposition upon which it relied. On October 30, 2007, Defendant Globe filed the requested Transcript Submission. Pursuant to the Court's October 16, 2007 Order, the Court will give Defendant's Motion further consideration in due course.

it asserted that its motion for sanctions remains viable but that Globe's motion for protective order is no longer viable, except to the extent that it opposes Plaintiff's motion for sanctions. (Docket No. 90). Contemporaneously therewith, Plaintiff filed a Supplemental Affidavit of Elizabeth Keiley for Attorney's Fees and Costs, in which Plaintiff contends that its total attorney's fees and costs in securing Globe's compliance with discovery now amount to $34,597.25.[6] (Docket No. 93).

On October 15, 2007, after a brief extension of time granted by the Court, Globe filed a Further Submission with Transcript References in Opposition to Motion for Sanctions and in Furtherance of Globe's Motion for a Protective Order and Other Relief, in which Globe asserts, among other arguments, that its motion for a protective order remains viable. (Docket No. 98). On October 17, 2007, the Court received the deposition transcript of Kenneth Vojnik.

On October 18, 2007 and November 7, 2007, the Court held settlement conferences in this matter; however, the parties were unable to reach an agreeable settlement.[7]

Needless to say, Plaintiff Square D's motion for sanctions and Defendant Globe's motion for protective order are fully briefed and ripe for ruling. The Court addresses each in turn and in detail below.

## PENDING MOTIONS

---

[6] Plaintiff also filed supporting documentation thereto under seal. (Docket Nos. 91 and 94).

[7] The Court notes that while the instant motions were filed on June 1, 2007 (Square D's motion for sanctions) and July 9, 2007 (Globe's motion for protective order), said motions were not fully briefed until on or about October 17, 2007, when the Court received the last relevant deposition transcript. Thereafter, upon agreement of the parties, the Court engaged in settlement negotiations, holding in abeyance a ruling on the instant motion pending the resolution of said negotiations.

1.      *Square D's motion for sanctions*

In its motion for sanctions, Plaintiff Square D seeks an order holding Globe in contempt of court, alleging that it has "routinely and repeatedly" violated this Court's August 21, 2006 Agreed Consent Order, which enjoined Defendant Globe from selling, distributing, transferring, or disposing of any Square D products, including Square D circuit breakers, until further order of court.  Plaintiff asserts that Defendant Globe has produced documents demonstrating that it violated the Agreed Consent Order by selling said circuit breakers.[8]  On June 4, 2007, Defendant Globe filed a response, in which it admitted that while it sold "some" of Plaintiff's circuit breakers after the entry of the Agreed Consent Order, it did and "is doing everything within its power to comply with each and every request of the [P]laintiff herein in [sic]."  (Docket entry No. 72, at ¶7).

18 U.S.C. § 401(3) allows this Court, at its discretion, to hold a party in contempt for disobedience of a lawful order of the court, including an agreed consent order.[9]  "Even though a consent decree is an agreement of the parties, because a court adopts it and incorporates it into a judgment, a court may use its contempt powers to enforce it."  *Monument Builders of Pennsylvania, Inc. v. American Cemetery Assoc.*, Civil Action No. 84-3014, 2007 WL 1557106, at *8 (E.D. Pa.

---

[8]

In addition to the alleged violations of the Agreed Consent Order, Plaintiff also alleged that Defendant Globe had failed to pay the $2,000.00 in attorney's fees, as ordered by the Court on February 23, 2007.  On June 26, 2007, the Court issued an Order, instructing Globe to show cause as to why it should not be held in contempt for its failure to comply with the Court's February 23, 2007 Order, directing Globe to pay said fees.  On June 28, 2007, Globe filed a response to the Court's Order to Show Cause, alleging that it had attempted to make arrangements with counsel for the Plaintiff to pay the fees, but to no avail.  At the July 17, 2007 motion hearing, counsel for both Square D and Globe represented that counsel for Defendant had paid said fees to counsel for the Plaintiff, and thus said issue is now moot.  (*See* Docket No. 84 (Minute entry for motion hearing held on July 17, 2007)).

[9]

Section 401(3) provides, in pertinent part, that "[a] court of the United States shall have power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority, and none other, as--(3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command."  18 U.S.C. § 401(3).

May 24, 2007) (citing *Interdynamics, Inc. v. Firma Wolf*, 653 F.2d 93, 97 (3d Cir. 1981); *Delaware Valley Citizens' Council for Clean Air v. Pennsylvania*, 533 F.Supp. 869, 880 (E.D. Pa. 1982)).

Civil contempt is remedial in nature and is intended to coerce compliance with an order of the court or to compensate for losses or damages sustained by reason of noncompliance. *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (1949) (citations omitted). The plaintiff must prove defendant's contempt by clear and convincing evidence. *Schauffler v. Local 1291*, 292 F.2d 182, 189 (3d Cir. 1961); *see also Robin Woods Inc. v. Woods,* 28 F.3d 396, 399 (3d Cir. 1994) (providing that a finding of contempt must rest on clear and convincing evidence). Mere preponderance of the evidence is insufficient. *Id.* at 189-90.

"To prove contempt, the plaintiff must establish that there existed a valid order of the Court of which the defendant had knowledge and which the defendant disobeyed." *Buschmeier v. G&G Investments,* Inc., No. 02:03-MC-00506, 2005 WL 2545296, at *1 (W.D. Pa. Oct. 7, 2005) (citing *Lichtenstein v. Lichtenstein*, 425 F.2d 1111, 1113 (3d Cir. 1970)) ("Civil contempt is committed when a person violates an order of court which requires that person in specific and definite language to do or refrain from doing an act or series of acts"). Because civil contempt is remedial in nature, the defendant may be found guilty even though the violation may have been inadvertent. *Id.* "Willfulness and intent do not factor into the court's threshold finding of contempt, but are relevant only 'insofar as [they] pertain[ ] to the extent of the sanction to be imposed.'" *Derrick F. v. Red Lion Area School Dist.*, Civil No. 1:06-CV-1463, 2007 WL 712128, at *4 (M.D. Pa. Mar. 7, 2007) (citing *Harley-Davidson, Inc. v. Morris*, 19 F.3d 142, 148-49 (3d Cir. 1994) (alterations in original)); *see also McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (1949) ("The absence of willfulness does not relieve from civil contempt").

In a civil contempt proceeding, a defendant may assert a present inability to comply with the order. *U.S. v. Rylander*, 460 U.S. 752, 757 (1983); *see also Maggio v. Zeitz*, 333 U.S. 56, 75-76 (1948). In raising this defense, it is well settled that the defendant has the burden of production. *See McPhaul v. United States*, 364 U.S. 372 (1960). The defendant must produce some evidence to explain or justify his refusal. *Id.* For example, a party cannot be held in contempt for failure to comply with a sanctions order if he lacks financial ability to comply. *Loftus v. Southeastern Pennsylvania Transportation Authority*, 8 F. Supp. 2d 464, 468 (E.D. Pa 1998). To satisfy the burden of proof that it is unable to comply, defendant must show "categorically and in detail" why it is unable to comply. *O'Leary v. Moyer's Landfill, Inc.*, 536 F. Supp. 218, 219 (E.D. Pa 1982) (quoting *N.L.R.B. v. Trans-Ocean Export Packing, Inc.*, 473 F.2d 612, 616 (9th Cir. 1973)). A defendant may escape contempt by showing that it could not possibly comply with the court's order despite making all reasonable efforts to do so. *Harris v. City of Philadelphia*, 47 F.3d 1333, 1340 (3d Cir. 1995). "However, where the court determines that 'defendants violated their obligations under the decree by failures of diligence, effective control, and steadfast purpose to effectuate the prescribed goals,' contempt findings are in order." *Palmigiano v. Garrahy*, 448 F.Supp. 659, 670 (D.R.I. 1978) (internal citations omitted). In addition, good faith is not a defense to civil contempt. *Robin Woods*, 28 F.3d at 399.

Here, it is beyond dispute that a valid order of the Court exists (August 21, 2006 Agreed Consent Order) of which Defendant Globe had knowledge (it consented to the Agreed Consent Order, which was signed by Globe's counsel of record)[10] and which, based upon the printout of sales

---

[10]

While it is unclear from Mr. Rosenzweig's deposition testimony when he knew of the existence of the Agreed Consent Order and, in particular, the extent of said Order, (*see* J. Rosenzweig Deposition, at 101:14-106:11) (recalling

provided by the Plaintiff as well as Globe's own admission, (*see* Docket No. 72, at 2) ("This sale, while not including exclusively Square 'D' products, it contains some of [P]laintiff[']s circuit breakers"); (Docket No. 98, at 1) ("Globe breached said Order by continuing to engage in the sale and purchase of said items"), Globe violated. Accordingly, the Court finds that the Plaintiff has proven contempt by clear and convincing evidence. *See Buschmeier*, 2005 WL 2545296, at *5. Furthermore, Defendant Globe has not alleged, let alone established a valid defense. While, at one point in its response, Globe asserts that it "lacks the financial resources of the [P]laintiff and the co-[D]efendants named in this matter", (*see* Docket No. 72, at 2), Globe fails to cite any evidence or attach any documentation in support of same and thus has failed to carry its burden to establish a defense of financial inability to comply with the Court's Order.[11] In addition, the Court notes while "[t]here is general support for the proposition that a [party] may not be held in contempt as long as it took all reasonable steps to comply", *Harris v. City of Phila.*, 47 F.3d 1311, 1324 (3d Cir.1995), again, Defendant Globe has failed to establish that it took any steps let alone "all reasonable steps

---

a conversation with Joel Mandel in the spring of 2007 in which it was "impressed upon" him that a restriction existed as to Globe sales of Square D circuit breakers), Rosenzweig testified that, to his knowledge, Globe last sold Square D circuit breakers in or about May of 2007, (*see id.*, at 55:23-24), approximately eight months after entry of the Agreed Consent Order. In addition, Joel Mandel (owner and Vice-President of Globe) testified that, despite the Agreed Consent Order, Globe continued to buy and sell Square D product, (*see* J. Mandel Deposition, at 45:3-17); *see also* A. Mandel Deposition, at 23:3-18 (July 19, 2007) (testifying as the employee at Globe in charge of purchasing and sales of Square D circuit breakers that Globe bought Square D circuit breakers "within the past year" and last sold Square D circuit breakers "[p]robably in May [2007]"). Regardless, knowledge of the Agreed Consent Order is imputed to the client through its counsel. *See In re Kensington Intern. Ltd.*, 368 F.3d 289, 315 (3d. Cir. 2004) (citing Restatement (Second) of Agency § 9(3) (1958)) (noting that "the attorney and client have an agency relationship and therefore any facts known by the attorney may generally be imputed to the client").

11

In addition, while it is unclear from the pleadings and Globe fails to articulate as much, it appears to the Court that Globe asserts a good faith defense, *see e.g.*, Docket No. 72, at ¶¶3,6 (asserting that "the way business is conducted would have prevented the [Defendant] or its counsel from having any idea as to transactions that took place after the consent order was entered" and noting that, in terms of the sales of Plaintiff's circuit breakers, "many transactions are handled by individuals who are not principles [sic] within Globe and who failed to recognize that their actions were in violation of the order"), which, as noted above, is not a defense to civil contempt, *see Robin Woods*, 28 F.3d at 399.

to comply" with the August 21, 2006 Agreed Consent Order,[12] *see id.* (assuming *arguendo* that substantial compliance is a defense to civil contempt, the court found the accused party did not meet its burden of showing that it made a good faith effort to take all reasonable steps to comply with the court's order); *Robin Woods Inc. v. Woods*, 28 F.3d 396, 399 (3d Cir. 1994) (providing that even if the court were to recognize substantial compliance as a defense to contempt, it would not apply in that case).

As to the appropriate relief, sanctions for civil contempt serve two purposes: "to coerce the defendant into compliance with the court's order and to compensate for losses sustained by the disobedience." *Robin Woods*, 28 F.3d at 400 (quoting *McDonald's Corp. v. Victory Investments*, 727 F.2d 82, 87 (3d Cir. 1984)). Often times, the relief granted "takes the form of a fine in the amount of the damages sustained by a petitioner and an award of costs and attorney's fees." *Quinter v. Volkswagen of America*, 676 F.2d 969, 975 (3d Cir. 1982) (citation omitted).

However, "[a] finding of contempt does not automatically require the imposition of sanctions and an assessment of damages against a contemnor can only be made once actual damages resulting from the contempt are shown." *Concerned Citizens of Bridesburg v. City of Phila.*, Civ. A. No. 85-14, 1987 WL 6013, at *5 (E.D. Pa. Jan. 28, 1987) (citing *Thompson v. Johnson*, 410 F.Supp. 633, 643 (D.C. Pa. 1976)). The *Bridesburg* Court further explained that "any fine imposed for civil contempt must not exceed the actual damages caused the offended party by a violation of the court's order, and the offended party must prove his or her damages by clear and convincing evidence." *Id.* (internal and end citations omitted). In the end, district courts possess "wide discretion" to determine

---

12

The Court notes that counsel for Globe has alluded to computer upgrades at Globe facilities but has failed to submit any proof in support thereof.

a remedy for civil contempt. *Derrick F. v. Red Lion Area School Dist.*, Civil No. 1:06-CV-1463, 2007 WL 712128, at *4 (M.D. Pa. March 7, 2007) (citation omitted).

Here, as to the relief requested, Square D seeks an order from the Court:

> (1) [r]equiring Globe to produce within seven (7) days of the entry of the Court's Order, all purchase and sales records, including purchase orders, invoices, remittance advices, shipping records, and other documents, relating to or otherwise reflecting its purchases and sales of Square D circuit breakers from January 1, 2003 through May 31, 2007; (2) [r]equiring Globe to submit to an inspection by Square D (including its attorneys) at Globe's expense, of its inventory of Square D circuit breakers as well as Globe's offices, warehouses, storage containers or facilities where Square D circuit breakers are or may be located; (3) [r]equiring Globe to submit to a forensic inspection of its computer systems which record its purchases and sales of Square D products and its inventory of such products, with such inspection to be incurred at Globe's sole expense and cost; (4) [i]mposing a monetary sanction of $75,000 against Globe; (5) [a]warding Square D its reasonable attorneys' fees incurred in pursuing this motion and its previous efforts to secure Globe's compliance with the Court's discovery orders[, which, based on counsel for Square D's supplemental affidavit and sealed supporting documentation, amounts to $34,597.25]; and (6) [a]warding Square D such other relief as the Court deems necessary and appropriate under the circumstances.

(Docket No. 71, at 8-9).

First, as to actual damages incurred by Plaintiff Square D as a result of Globe's violations of the Agreed Consent Order, because Square D has not established through the presentation of sufficient evidence the amount of damages sustained by it as a result of Globe's violations, the Court declines to impose compensatory relief for past violations of the Agreed Consent Order at this time. This, however, does not foreclose the possibility of a compensatory fine being imposed in the future upon a showing, by clear and convincing evidence, of actual loss suffered by Plaintiff Square D as a result of Globe's violations of the Agreed Consent Order. *See Concerned Citizens of Bridesburg*,

1987 WL 6013, at *5.

Second, the Court notes that it has previously ordered the majority of relief requested by Square D. (*See* Docket No. 73) ("June 12, 2007 Order"). Accordingly, to the extent that Defendant Globe has not complied with this Court's June 12, 2006 Order, the Court orders that Defendant Globe shall to do so forthwith in the following manner: (1) within ten (10) days of this Order, produce all purchase and sales records, including purchase orders, invoices, remittance advices, shipping records, and other documents, relating to or otherwise reflecting its purchases and sales of Square D circuit breakers from January 1, 2003 through the present date; and (2) within thirty (30) days of this Order, submit to an inspection by Square D (including its attorneys), at Globe's expense, of its inventory of Square D circuit breakers as well as Globe's offices, warehouses, storage containers or facilities where Square D circuit breakers are or may be located, and also submit to a forensic inspection of its computer systems which record its purchases and sales of Square D products and its inventory of such products, with such inspection to be incurred at Globe's sole expense and cost.

Third, as to Square D's request for a monetary sanction in the amount of $75,000, the Court declines to impose such a sanction *at this point in the litigation*. Of particular relevance here, the Court finds that there is no evidence before the Court establishing any bad faith on the part of Globe in violating the August 21, 2006 Agreed Consent Order. *See Derrick F. v. Red Lion Area School Dist.*, Civil No. 1:06-CV-1463, 2007 WL 712128, at *4 (M.D. Pa. March 7, 2007) (citing *Harley-Davidson, Inc. v. Morris*, 19 F.3d 142, 148-49 (3d Cir. 1994)) (willfulness and intent only relevant to a contempt proceeding "to the extent of the sanction to be imposed"). Moreover, in numerous documents filed with this Court, Globe continually asserts that its violations of the Agreed

Consent Order were the result of good faith and human error. (*See* Docket No. 72, at ¶6) (noting that "many transactions [at Globe] are handled by individuals who are not principles [sic] within GLOBE and who failed to recognize that their actions were in violation of the [August 21, 2006 Agreed Consent O]rder); (Docket No. 98, at 1) (citing human error). Finally, the Court also notes that "the purpose of civil contempt is purely remedial rather than punitive." *Monument Builders of Pennsylvania, Inc. v. American Cemetary Assoc.*, Civil Action No. 84-3014, 2007 WL 1557106, at *8 (E.D. Pa. May 24, 2007) (citations omitted).

Fourth and finally, as to Square D's request for reasonable attorneys' fees incurred in pursuing this motion and its previous efforts to secure Globe's compliance with the Court's discovery orders, in particular the August 21, 2006 Agreed Consent Order, based on the finding of contempt as well as the documentation submitted by Plaintiff Square D, the Court finds the attorney fees and costs requested to be reasonable and grants said request, ordering Defendant Globe to pay, within fourteen (14) days of this Order, Plaintiff Square D its reasonable attorneys' fees and costs in the amount of $34,597.25.[13] *See Robin Woods*, 28 F.3d at 400 (rejecting the notion that "a finding of willfulness is a prerequisite to an award of attorneys' fees against the violator of an injunction").

II.    *Globe's motion for protective order*

In its motion for protective order, Globe seeks a protective order "modifying and limiting the previously entered order of the Court dated [sic] granting Plaintiff Square 'D' company further inspection at Globe Electric Company's place of business including access to computers and related

---

[13]

Once again, the Court notes that it previously ordered Globe to pay Plaintiff Square D's attorneys' fees. (*See* Docket No. 73, ¶6) ("June 12, 2007 Order").

records."[14]  (Docket No. 82, at 1).  In particular, Globe requests that the Court enter an order (1) limiting the inspection to documents regarding the subject circuit breakers; (2) prohibiting the contacting of customers of Globe (presumably by Square D) as to sales and/or purchases that have no relation to the subject matter of the pending action, i.e., the subject circuit breakers; (3) prohibiting the inspection of Globe computers in that they contain personal information of customers; (4) prohibiting the continued publication, both orally and in writing, of statements implying that Globe deals in counterfeit Square D products; and (5) not issuing sanctions against Globe.  (Docket No. 82, at 1-2).

In response, Square D argues that Globe's motion for a protective order is "an untimely and unfounded attack on the Discovery Orders [dated February 23, 2007 and March 9, 2007] and Contempt Order [dated June 12, 2007]."  (Docket No. 83, at 3).  Further, Square D asserts that Globe's motion represents an attempt to limit Plaintiff's investigation and discovery.  *Id.*

As a threshold point, the Court notes that much of the "relief" sought by Globe in its motion for protective order constitutes matters outside the scope of the request for production of documents and inspection of Globe's facilities, inventory, and computers by Square D.  For example, Globe's requested relief that the Court prohibit Square D from (1) contacting its customers regarding alleged counterfeit circuit breakers or (2) making statements which imply that Globe deals in counterfeit circuit breakers, represents relief beyond the purview of Federal Rule of Civil Procedure 26(c) and

---

14

While Globe fails to provide a date of the order of Court referenced, it appears that Globe is referring to the Court's June 12, 2007 Order, in which the Court ordered Globe to submit to an inspection by Square D (and its attorneys) of its inventory of Square D circuit breakers as well as Globe's offices, warehouses, storage containers, or facilities where said circuit breakers may be located.  In addition, the Court ordered Globe to submit to a forensic inspection of its computer systems, all at Globe's cost.

hence, the Court declines to comment on same.[15]  In the same manner, Globe's request that the Court refrain from sanctioning it represents "relief" that is not appropriate in the issuance of a protective order.  Accordingly, the Court denies Globe's motion for a protective order to the extent that it requests said relief.

Next, as to Globe's request for a protective order "limiting the inspection to documents provided to demand [sic] with regard to the subject circuit breakers", (Docket No. 82, at ¶1), the Court notes that in its June 12, 2006 Order as well as in the instant Order, *see supra*, the Court has tailored both the production of documents and the relevant inspections (of Globe's facilities and inventory and of its computer systems) to the Square D circuit breakers.  Accordingly, Plaintiff's motion for a protective order to the extent that it seeks an order "limiting the inspection to documents provided to demand with regard to the subject circuit breakers" is moot and thus denied.

Finally, as to the remaining relief requested by Globe, i.e., prohibiting the inspection of Globe computers in that they contain personal information of customers, (*see* Docket No. 82, at ¶3), the Court now turns to the applicable standard.

Federal Rule of Civil Procedure 26(c) authorizes that, upon "good cause shown", a court may issue a protective order in order to prevent the disclosure of certain information when "justice

---

15

In the Court's estimation, such relief represents that akin to relief requested in a motion for temporary restraining order and/or a preliminary injunction (related to a restrictive covenant or a non-compete agreement) but not a protective order. *Siemens Medical Solutions Health Services Corp. v. Carmelengo*, 167 F.Supp.2d 752 (E.D. Pa. 2001) (holding that preliminary injunction was warranted enjoining employee from contacting or dealing with any of employer's customers in certain areas for a period of one year following his termination from new business associate position as well as from contacting or otherwise attempting to solicit any customers he solicited, serviced, or contacted while employed for period of one year from date of his termination).  Regardless, even if such relief fell within the scope of Rule 26(c), Defendant Globe has failed to establish good cause for this Court to prohibit Square D from (1) contacting its customers regarding alleged counterfeit circuit breakers or (2) making statements which imply that Globe deals in counterfeit circuit breakers.

requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense", including "that certain matters not be inquired into, or that the scope of the disclosure or discovery be limited to certain matters" or "that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a designated way".[16] Fed.R.Civ.P. 26(c)(4) and (7); *see Sprinturf, Inc. v. Southwest Recreational Industries, Inc.*, 216 F.R.D. 320, 322 (E.D. Pa. 2003) (applying the "good cause shown" standard to a motion for protective order under Rule 26(c)(7) (citation omitted)); *McCurdy v. Wedgewood Capital Management Co., Inc.*, No. Civ.A. 97-4304, 1998 WL 964185, at *8 (E.D. Pa. Nov. 16, 1998) (applying the "good cause shown" standard to a motion for protective order under Rule 26(c)(4)). The presumption in the Third Circuit is that there exists a right of public access to judicial proceedings and judicial records. *See Littlejohn v. Bic Corp.*, 851 F.2d 673, 677-78 (3d Cir. 1988). A protective order is "an exceptional form of relief, to be granted only where the most serious prejudice is threatened, even-and perhaps especially-where the parties seek it jointly." *See Bryan v. Pep Boys-Manny, Moe and Jack*, No. Civ. A. 00-1525, 2000 WL 1367600, at *1 (E.D. Pa. Sept. 21, 2000) (citation omitted).

A showing of "good cause" is a threshold requirement for the protection of discovery materials. *See Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994). "Good cause is established on a showing that disclosure will work a clearly defined and serious injury to the party seeking closure. The injury must be shown with specificity." *Publicker Indus., Inc. v. Cohen*, 733

---

16

Because Globe fails to reference a specific section under Rule 26(c), the Court presumes that it seeks a protective order under either Rule 26(c)(4) or Rule 26(c)(7), which most closely parallel the relief requested. Regardless, the moving party must show "good cause." *See Sprinturf*, 216 F.R.D. at 322 (Rule 26(c)(7)); *McCurdy*, 1998 WL 964185, at *8 (Rule 26(c)(4)).

F.2d 1059, 1071 (3d Cir. 1984) (citations omitted). "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning," do not support a showing of good cause. *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986).

In determining whether "good cause" exists as Rule 26(c), the Third Circuit has enumerated the following factors that may be considered: (1) whether disclosure will violate any privacy interests; (2) whether the information is being sought for a legitimate purpose or for an improper purpose; (3) whether disclosure of the information will cause a party embarrassment; (4) whether confidentiality is being sought over information important to public health and safety; (5) whether the sharing of information among litigants will promote fairness and efficiency; (6) whether a party benefitting from the order of confidentiality is a public entity or official; and (7) whether the case involves issues important to the public. *See Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 483 (3d Cir. 1995) (citing *Pansy*, 23 F.3d at 787-91). A party desiring a protective order must demonstrate specifically, through an application of these factors, that disclosure would work a clearly defined and serious injury upon him. *See Pansy*, 23 F.3d at 786.[17]

Here, Globe's motion for protective order is wholly devoid of any reference to the specific factors as evidence of a "clearly defined and serious injury." *Publicker Indus.*, 733 F.2d at 1071. While Globe generally references the need to protect personal information such as names, addresses, credit card numbers, etc. as to Globe's customers, Globe fails to provide any specifics and, in the Court's view, the references set forth merely amount to broad and unsubstantiated allegations of

---

[17]

In addition, the Court notes that this District has a standing Order, issued by Chief Judge Donnetta W. Ambrose, discouraging the practice of confidentiality and protective orders. *See* January 27, 2005 Order (filed on January 31, 2005), at http://www.pawd.uscourts.gov ("Confidentiality and Protective Orders in Civil Matters").

harm.  Furthermore, the Court finds that at least some of the factors weigh against the issuance of a protective order here considering the information at issue is important to the public health and safety in that the counterfeit circuit breakers represent a potential danger to unknowing consumers and that deposition testimony demonstrates that Globe had dealings (either knowingly or unknowingly) with entities that allegedly dealt in counterfeit breakers.  (*See* J. Rosenzweig Deposition, at 91:8-95-18).  Accordingly, the Court finds that Globe has fallen far short of its burden.

Moreover, as asserted by Square D, Globe's request for a protective order is untimely, in that the Court ordered the production of documents and the inspection of Globe's facilities, inventory, and computers on June 12, 2007 and Globe filed the instant motion on July 9, 2007.  At that point, by its failure to comply within the time prescribed, Globe was already in violation of (1) at least part of Judge Hardiman's March 9, 2007 Order as well as (2) this Court's June 12, 2007 Order.  *See* March 9, 2007 minute entry (ordering Globe to produce its inventory of Square D products for inspection); Docket No. 73 (providing Globe seven and fourteen days, respectively, to produce said documents and submit to an inspection of Globe's facilities, inventory, and computers) ("June 12, 2007 Order").  Accordingly, Globe's motion for protective order to the extent it seeks to prohibit the inspection of Globe's computers in that they contain personal information of customers is denied.

## ORDER

Based on the foregoing, the Court orders the following:

1.  Plaintiff's Motion for Rule to Show Cause and for Sanctions [DE 70] is granted in part and denied in part, but, as to the Court's decision to grant said motion, the Court awards relief different than that requested by the Plaintiff.  As an initial matter, the Court holds Defendant Globe

to be in contempt of the August 21, 2006 Agreed Consent Order. The Court grants the motion to the extent that it seeks the following relief and that it has not been provided to date and thus the Court orders the following: Defendant Globe shall (1) within ten (10) days of this Order, produce all purchase and sales records, including purchase orders, invoices, remittance advices, shipping records, and other documents, relating to or otherwise reflecting its purchases and sales of Square D circuit breakers from January 1, 2003 through the present; and (2) within thirty (30) days of this Order, submit to an inspection by Square D (including its attorneys), at Globe's expense, of its inventory of Square D circuit breakers as well as Globe's offices, warehouses, storage containers or facilities where Square D circuit breakers are or may be located, and also submit to a forensic inspection of its computer systems which records its purchases and sales of Square D products and its inventory of such products, with such inspection to be incurred at Globe's sole expense and cost. The Court further grants the motion to the extent that it seeks reasonable attorneys' fees and costs and the Court orders Defendant Globe to pay, within fourteen (14) days of this Order, to Plaintiff Square D its reasonable attorneys' fees and costs in the amount of $34,597.25. Finally, the Court denies, without prejudice, the motion to the extent that it seeks a monetary sanction in the amount of $75,000.

   2. Defendant Globe's Motion for Protective Order [DE 82] is denied in all respects.

                                        *s/ Nora Barry Fischer*
                                        Nora Barry Fischer
                                        United States District Judge

Dated: November 14, 2007
cc/ecf: All counsel of record.