IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SQUARE D COMPANY,<br>　　　　Plaintiff, | )<br>)<br>) |
| vs. | ) Civil Action No. 06-00459<br>) Judge Nora Barry Fischer |
| SCOTT ELECTRIC COMPANY, ET AL.,<br>　　　　Defendants. | )<br>) |

## MEMORANDUM ORDER

The instant dispute arises out of the execution of a forensic inspection of Defendant Globe Electric Supply Co., Inc.'s computer systems, which the Court originally ordered on June 12, 2007, more than one year ago. The forensic inspection of Globe's facilities has been the subject of numerous motions filed with this Court and has consumed an inordinate amount of time and money of the parties and judicial resources of this Court. Currently pending before the Court are cross motions for sanctions related to said forensic inspection. Because the two motions stem from the same set of circumstances, the Court will consider them together. For the following reasons, the Court will grant in part and deny in part Square D Company's Motion to Compel Against Globe Electric Supply Co. And For Rule 37(B) Sanctions [187] and the Court will deny Defendant Globe's "Cross-Motion Seeking Order Directing Square 'D' to Complete Forensic Inspection in the Manner Previously Ordered by this Court which Limited Same to 'Systems' Involved in the 'Purchase, Sale, or Inventory' of Square 'D' Merchandise"[1] [189].

---

[1] The full title of Globe's motion contains additional requests for relief carrying on for one full page, which the Court declines to reproduce here. Further, while the Court has previously declined to comment on Defendant Globe's filings with this Court, its response brief and brief in support of cross-motion consists of a series of stream of consciousness, run-on sentences riddled with spelling and grammar errors, which the Court deems wholly inappropriate to file in any court or proceeding.

# BACKGROUND[2]

The Court first addressed the issue of forensic inspection more than one year ago on a Motion for Rule to Show Cause and for Sanctions (Docket No. 70), filed by Plaintiff Square D on June 1, 2007. On June 12, 2007, the Court ordered that, within fourteen days of producing all documents relating to or otherwise reflecting Globe's purchases and sales of Square D circuit breakers from January 1, 2003 through May 31, 2007, "Globe shall submit to an inspection by Square D (including its attorneys), at Globe's expense, of its inventory of Square D circuit breakers as well as Globe's officers, warehouses, storage containers or facilities where Square D circuit breakers are or may be located." (Docket No. 73 at ¶¶2-3). The Court further ordered Globe to "submit to a forensic inspection of its computer systems which record its purchases and sales of Square D products and its inventory of such products, with such inspection to be incurred at Globe's sole expense and cost." (Docket No. 73 at ¶4). However, the Court held in abeyance its ruling as to sanctions and contempt, which leads to the second instance in which the Court addressed the issue of the forensic inspection.

On November 14, 2007, after finding Globe in contempt of Court and considering that "the information at issue is important to the public health and safety in that the counterfeit circuit breakers represent a potential danger to unknowing consumers," the Court again addressed the issue of the forensic inspection, ordering Globe to:

> submit to an inspection by Square D (including its attorneys), at Globe's expense, of its inventory of Square D circuit breakers as well as Globe's offices, warehouses, storage containers or facilities where Square D circuit breakers are or may be located, and also submit to a forensic inspection of its computer systems which records its purchases and sales of Square D products and its inventory of such

---

[2] The Court confines its background to that relating to the forensic inspection.

products, with such inspection to be incurred at Globe's sole expense and cost.

*Square D Co. v. Scott Elec. Co.*, Civil Action No. 06-459, 2007 WL 3488809, at *11 (W.D. Pa. Nov. 14, 2007). The Court further ordered that said inspection occur within thirty days, or on or before December 14, 2007. *Id.*

The third instance in which the Court addressed the issue of the forensic inspection arose on a motion from Globe, specifically its Motion Seeking a Protective Order Clarifying the Previously Entered Order of the Court Dated November 14th, 2007 (Docket No. 171), filed on March 31, 2008. Relevant to the forensic inspection, Globe requested that the Court limit the forensic inspection "to a set time and cost to avoid a fishing expedition," (Docket No. 171 at ¶1). In support, Globe attached an Affidavit of Boris Rosenstein, who asserted that the lack of any limits on the inspection would result in "staggering" costs. (Docket No. 174 at ¶5). At the risk of repeating itself here (although it appears necessary), the Court considered and rejected Globe's request:

> Globe's (and its technician's) assertion that the forensic inspection constitutes a fishing expedition ignores this Court's previous Orders. In its June 12, 2006 Order as well as its November 14, 2007 Memorandum Opinion and Order, the Court specifically and unequivocally ordered that the forensic inspection (of Globe's computer system) would be tailored and limited to Square D circuit breakers. (See Docket No. 73 at ¶ 4; Docket No. 110 at 15-21). Yet, Globe has filed another motion to limit the breadth of the forensic inspection in terms of time period and cost. As to the former, Globe's request is subsumed by the Court's limitation of the forensic inspection to Square D circuit breakers. For example, if Globe first sold Square D circuit breakers in 1995, then the forensic inspection may properly reach back that far. As to the latter, the Court refuses to set a dollar amount on the forensic inspection. As the Court has on at least two occasions already delineated the scope of the forensic inspection, i.e., limited to Defendant Globe's sale of Square D circuit breakers, the Court denies Globe's motion to the extent that it requests additional limitations on the forensic inspection.

> Finally, Globe requests that "initial costs" should be borne by Plaintiff Square D. (Docket No. 171-5 at 3). Once again, as the Court has previously ordered that Globe shall bear all costs related to the forensic inspection, the Court denies the same. Globe shall submit to the forensic inspection within thirty days of this Order, or at another time convenient for both parties but no later than the close of discovery. Failure to do so may result in further sanctions.

*Square D Co. v. Scott Elec. Co.*, Civil Action No. 06-00459, 2008 WL 1932307, at *1-2 (W.D. Pa. Apr. 30, 2008) (footnote omitted). Hence, except as to requested relief unrelated to the forensic inspection, the Court denied Globe's motion. Furthermore, the Court issued a not-so-subtle warning to the parties:

> Finally, the Court expresses its frustration with the continual problems surrounding discovery in this matter. The Court **ADVISES** the parties as well as counsel that failure to comply with the instant Memorandum Order in all respects may result in **harsh sanctions**, including but not limited to, 'prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters into evidence' or 'rendering a default judgment against a disobedient party.' *See generally* Fed.R.Civ.P. 37(b)(2)(A)(i)-(vii).

*Id.* at *3 (emphases in original).

After its April 30, 2008 Order, the parties scheduled the inspection for June 15, 2008 (Sunday) and June 16, 2008 (Monday). As such, on May 15, 2008, Square D served a Notice of Inspection, particularly advising the parties that Plaintiff would "inspect, image, and copy any electronically stored information located on Defendant Globe Electric Supply Co.'s computers." (Docket No. 187-4). Upon arrival, according to Plaintiff, Globe objected to a portion of the inspection and Plaintiff returned on June 20-22, 2008 (Friday through Sunday), in order to complete the inspection. However, again according to Plaintiff, Globe asserted numerous objections.

As a result, on June 27, 2008, Plaintiff Square D filed the instant motion, (Docket No. 187),

4

and, on July 2, 2008, Defendant Globe filed its cross-motion and response to Plaintiff's motion, (Docket No. 189 & 189-2). On July 11, 2008, Plaintiff filed Square D's Response to Globe's Cross-Motion for Sanctions. (Docket No. 194). On July 14, 2008, Defendant Globe filed its "Sur-Reply." (Docket No. 195).

**ANALYSIS**

In its motion, Plaintiff Square D requests an order "(1) compelling Globe Electric to submit to a forensic inspection of its remaining computer systems (including the eleven remaining work stations) within 10 days, and (2) mandating that Globe Electric allow any imaged and copied data to be removed from Globe Electric's premises by Square D forensic consultant for further querying based on agreed-upon search terms." (Docket No. 187 at 13). Further, as a sanction for Globe's conduct related to the forensic inspection, Square D requests an order entering default judgment against Globe and in favor of Square D on Counts I through V in the Second Amended Complaint as well as costs and expenses related to the multiple inspections and the instant motion. In its cross-motion, Defendant Globe requests an order (1) directing Plaintiff to complete its forensic inspection of the server and two workstations at the offices of Globe or its technician in the presence of a representative of "Globe's choosing;" (2) prohibiting the further inspection of Globe computers or stations "that are not utilized for the purchase, sale, or inventorying of Square 'D' product or storage of information falling within the scope of the Courts [sic] prior Orders;" and (3) granting sanctions in favor of Globe and against Square D for "its intentional disregard of the Courts [sic] prior Orders" as well as "its improper service and mischaracterization [sic] (as an Order of this Court) of a document prepared by Square 'D' counsel without service upon the office of GLOBE counsel," (Docket No. 189 at ¶¶1-3) (emphasis in original). Globe requests sanctions in the form of either (1)

5

dismissing or modifying the August 21, 2006 Agreed Order for Temporary Injunctive Relief (Docket No. 38) to permit the sale of Square D products by Globe,[3] and/or (2) imposing costs on Plaintiff Square D for any future forensic inspections beyond June 15 and June 16 "occasioned by the mistake or error of their technician." (Docket No. 189 at ¶4).

The Court will address Plaintiff's motion in two parts: (1) the underlying dispute as to the parameters to the forensic inspection, and (2) the appropriate sanctions.

As an initial point, because the discovery disputes here relate to the disclosure of electronically stored information, the Court notes that, in wake of the December 2006 Amendments to the Federal Rules of Civil Procedure, Federal Rule of Civil Procedure 26(a) requires a party to disclose all documents, *including electronically stored information*, that the party may use to support its claims or defenses without awaiting a discovery request. Fed.R.Civ.P. 26(a)(1)(A)(ii); *see also* Fed.R.Civ.P. 26 Advisory Committee Notes (2006 Amendment) (providing that, under Rule 26(a), "a party must disclose electronically stored information as well as documents that it may use to support its claims or defenses"). Furthermore, Rule 26(b)(2) only limits the discovery of electronically stored information from sources that the party identifies as not reasonably accessible

---

[3] Recently, this Court denied an identical request by Globe to modify the August 21, 2006 Agreed Consent Order for Temporary Injunctive Relief. *See Square D Co. v. Scott Elec. Co.*, Civil Action No. 06-00459, 2008 WL 1932307, at *2 (W.D. Pa. Apr. 30, 2008) ("While the Court recognizes its authority to amend the August 21, 2006 Agreed Order for Temporary Injunctive Relief, the Court finds Globe's request premature insofar as discovery is on-going. Accordingly, the Court denies Globe's request without prejudice and with leave to re-file at a later and more appropriate time"). Approximately two months later is not a "more appropriate time." Hence, the Court denies Globe's request to modify the August 21, 2006 Agreed Consent Order for Temporary Injunctive Relief.

because of undue burden or cost. Fed.R.Civ.P. 26(b)(2);[4] *see also* Fed.R.Civ.P. 26 Advisory Committee Notes (2006 Amendment) ("Under [Rule 26(b)(2)], a responding party should produce electronically stored information that is relevant, not privileged, and reasonably accessible, subject to the (b)(2)(C) limitations that apply to all discovery"). Nevertheless, a court may nonetheless order such discovery upon a showing of good cause. Fed.R.Civ.P. 26(b)(2)(B).

1. *Parameters of the forensic inspection*

For the fourth time, the Court must address the parameters of the forensic inspection.

According to Plaintiff Square D, Defendant imposed new parameters on the June 2008 inspection, specifically, that (1) Square D would not be allowed to remove any imaged electronically-stored information ("ESI") from Globe's premises, and (2) Square D could only access the server at Globe's facility to perform searches. After only being able to image two (2) workstations (out of a total of 13) on June 15, 2008, Globe objected as to Plaintiff's continued imaging on June 16, 2008 as it interfered with its general business operations. Accordingly, Plaintiff returned on June 20-22, 2008, at which time it completed the imaging of Globe's server. However, according to Square D, Globe imposed yet another new parameter to the forensic inspection by refusing to allow Plaintiff's forensic consultant to take the hard drives used to image the ESI on Globe's server and two workstations.

In the Court's estimation, the instant motions raise two issues related to the forensic inspection: (1) the scope of the inspection in terms of workstations to be inspected, i.e., only two workstations, and (2) whether Square D may remove the imaged ESI from the premises. The Court

---

[4] The producing party bears the burden to show that the information is not reasonably accessible. Fed.R.Civ.P. 26(b)(2).

will address each in turn. However, as an initial point, the Court notes that the two-day forensic inspection began on Sunday, June 15 and continued into Monday, June 16. However, problems developed because, according to Globe, "the server had to be done on Sunday because the entire business would be shut down during the period of that inspection." (Docket No. 189-2 at ¶8). However, the Court never imposed any parameter on the forensic inspection (and Globe never requested the same) limiting the execution of the inspection to a Sunday. While the parties are free to agree upon the day of the week on which they will execute the forensic inspection and the Court encourages the same, the Court declines to impose any limitation as to the day of the week of the execution of the continued forensic inspection, with the exception of Saturday due to counsel for Globe's religious observance. To the extent that the forensic inspection interrupts the business of Globe, it shall bear that burden. The Court now turns to the specific issues here.

First, as to the scope of the forensic inspection, relying on the language of the Court's November 14, 2007 Order requiring Globe to submit to "a forensic inspection of its computer systems which records its purchases and sales of Square D products and its inventory of such products," *Square D Co. v. Scott Elec. Co.*, Civil Action No. 06-459, 2007 WL 3488809, at *11 (W.D. Pa. Nov. 14, 2007), counsel for Defendant Globe asserts that "there is one server and two work stations that have any connection whatsoever with Square D product." (Docket No. 189-2 at 2). Defendant Globe apparently expects Plaintiff Square D (and the Court) to, in lay men's terms, "take its word for it." However, considering Globe's long history of obstinate behavior in the discovery process and seeming lack of candor to the Court on occasions, the Court refuses to accept its representation in this instance. Moreover, given that the Court ordered the forensic inspection on *June 12, 2007*, the timing of Globe's revelation *on the day of the inspection* that only two (2)

workstations contain any relevant information within the parameters of the ordered inspection casts some doubt on its veracity.[5] If Globe wished to so limit the forensic inspection, it should have sought leave of Court to do *so long ago* as opposed to imposing limitations *on the day of the inspection*. Accordingly, Globe shall give Plaintiff Square D access to all thirteen (13) workstations for its forensic inspection. Said inspection shall take place in the next thirty (30) days from the date of this Memorandum Opinion and Order.[6]

Second, the parties dispute whether Square D may remove the imaged ESI from Globe's facilities. Plaintiff requests an order "mandating that Globe Electric allow any imaged and copied data to be removed from Globe Electric's premises by Square D forensic consultant for further querying based on agreed-upon search terms." (Docket No. 187 at 13). Globe responds that "even a small town such as New York has experts and the equipment necessary to complete the inspection."[7] (Docket No. 189-2 at ¶31). A cursory reading of the Court's previous orders concerning the forensic inspection reveal that the Court never imposed any parameter requiring Square D to review all imaged and copied ESI at Globe's facility. Again, Globe is more than late

---

[5] The Court notes that the countless objections to the electronic discovery process and specifically to the execution of the forensic inspection raises the specter of spoliation of evidence.

[6] However, if, after the forensic inspection of the remaining thirteen (13) workstations, Globe can demonstrate through documentary evidence that none of said workstations contained any information related to the sale of Square D circuit breakers, Defendant Globe may file a motion seeking reimbursement of costs and fees related to that portion of the forensic inspection, i.e., search of said workstations.

[7] Counsel for Globe goes on to comment that "[w]e [i.e., New York] even have Courts." (Docket No. 189-2 at ¶31). To the extent that counsel for Globe attempts to make light of the situation by injecting sarcasm into the instant dispute, the Court finds that such commentary is inappropriate and unprofessional.

in making these requests. Nevertheless, the Court fails to see the value of such a restriction. Furthermore, Defendant Globe proffers no case law or rule let alone any reason whatsoever why the Court should impose such a restriction, save the sarcastic comment that Globe has "the equipment necessary to complete the inspection." (Docket No. 189-2 at ¶31). To the extent that Globe requests that the Court now impose such a restriction on the analysis of the imaged and copied ESI, the Court declines to do so.[8]

Finally, at certain points in its response and cross-motion, counsel for the Defendant argues the underlying merits of Plaintiff's claims, asserting that Globe never sold counterfeit circuit breakers. (Docket No. 189-2 at ¶¶30). However, Globe can only prove as much if it allows the discovery process to proceed. On the contrary, Defendant Globe's and its counsel's continual obstruction of the discovery process and particularly of the Court-ordered forensic inspection impedes the discovery process which would lead (according to Defendant Globe) to its own vindication.

2.  *Sanctions*

Federal Rule of Civil Procedure 37 provides that if a party fails to provide or permit discovery, the Court may issue "further just orders," including the following:

> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;

---

[8] Similarly to Globe's proposed limiting of the forensic inspection to two (2) workstations, counsel for Defendant Globe should have sought leave of Court to impose such a restriction long ago as opposed to waiting until the day of the inspection and requesting relief from the Court thereafter.

> (iii) striking pleadings in whole or in part;
> (iv) staying further proceedings until the order is obeyed;
> (v) dismissing the action or proceeding in whole or in part;
> (vi) rendering a default judgment against the disobedient party; or
> (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed.R.Civ.P. 37(b)(2)(A)(i)-(vii).[9] Furthermore, Rule 37(b)(2)(C) mandates the payment of expenses:

> Instead of or in addition to the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust.

Fed.R.Civ.P. 37(b)(C).

Presumably taking its cues from the Court's April 30, 2008 Memorandum Order in which it alluded to certain avenues of potential relief, Square D specifically requests either default judgment or "that Globe Electric be precluded from offering evidence supporting its affirmative defenses to Square D's claims." (Docket No. 187 at 3).

First, as to default judgment, when deciding whether to impose default judgment as a Rule 37 sanction, a court should consider and weigh the following factors:

> (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party of the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an

---

[9] The Court notes that Rule 37(d) addresses sanctions surrounding a party's failure to respond to a request for an inspection, allowing a court to order sanctions where "a party, after being properly served ... a request for inspection under Rule 34, fails to serve its answers, objections, or written response." Fed.R.Civ.P. 37(d)(1)(A)(ii). However, the conduct described by Plaintiff Square D does not appear to implicate said Rule.

11

analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense.

*Poulis v. State Farm Fire and Casualty Co.*, 747 F.2d 863, 868 (3d Cir. 1984) (emphasis omitted). "[N]ot all of the *Poulis* factors need be satisfied in order to dismiss a complaint." *Mindek v. Rigatti*, 964 F.2d 1369, 1373 (3d Cir. 1992) (citing *C. T. Bedwell & Sons, Inc. v. Int'l. Fidelity Ins. Co.*, 843 F.2d 683, 696 (3d Cir. 1988)). However, the U.S. Court of Appeals for the Third Circuit has repeatedly stressed that "defaults are drastic sanctions, termed extreme by the Supreme Court." *Harris v. City of Philadelphia*, 47 F.3d 1311, 1330 n.18 (3d Cir.1995) (citing *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, (1976)), and therefore the entry of default judgment as a Rule 37(b) sanction should be "reserved for cases comparable to the 'flagrant bad faith' and 'callous disregard' exhibited in *National Hockey League*." *Harris*, 47 F.3d at 1330 n.18.[10]

Considering the *Poulis* factors, the Court declines to enter default judgment against Defendant Globe *at this point in the litigation* because, in the Court's estimation, Globe's failure to comply with the Court's Orders concerning the forensic inspection and overall lack of respect and deference to the Court's authority[11] falls just shy of conduct befitting default judgment, i.e., "flagrant

---

[10]

In that case, the Supreme Court held that, considering plaintiffs' failure to answer interrogatories after seventeen months of extensions, admonitions by and warnings from the Court, and promises and commitments from plaintiffs, "the District Judge did not abuse his discretion in finding bad faith on the part of these respondents, and concluding that the extreme sanction of dismissal was appropriate in this case by reason of respondents' 'flagrant bad faith' and their counsel's 'callous disregard' of their responsibilities." *National Hockey League*, 427 U.S. at 643.

[11]

For example, in its most recent filing, counsel for Defendant Globe labels this Court as a "rubber stamp for whatever [Plaintiff Square D] deem[s] appropriate." (Docket No. 189-2 at ¶1; *see also* Docket No. 189-2 at ¶31). Needless to say, the Court takes issue with Globe's characterization, especially in light of the fact that this Court has demonstrated patience with Globe despite its trying behavior throughout the history of this case.

bad faith" and "callous disregard" akin to the conduct in *National Hockey League*.[12]

Finally, Globe's cross-motion and request for sanctions appears to arise out of a "Notice of Continued Inspection" served upon Globe, which, according to Globe, a technician from Square D represented as a court document when, in fact, "[i]t was not a Court order of any kind." (Docket No. 189-2 at ¶18). First and foremost, on its face, it is clear that the "Notice of Continued Inspection" came from counsel for Square D, not the Court. Hence, any confusion over the source of the document could (and should) have been immediately ameliorated by simply reviewing the document. Second, attached to Square D's response is documentation that, despite counsel for Globe's assertion that Plaintiff bypassed his office, (*see* Docket No. 189-2 at ¶18), Plaintiff indeed sent the "Notice of Continued Inspection" to counsel for Globe by way of facsimile transmission on June 19, 2008

---

[12]

In support of default judgment, Square D cites two cases: *Clarke v. Whitney*, 169 F.R.D. 623 (E.D. Pa. 1996) and *United States v. Moser*, 168 F.R.D. 171 (M.D. Pa. 1996). However, the Court finds that the weight of Globe's infractions do not equal those in *Clarke* and *Moser* so that default judgment is not warranted, at this time. *See Clarke*, 169 F.R.D. at 626-27 (entering default judgment against defendant for failure to comply with discovery orders where, despite counsel's attempts to comply with court orders, defendant herself flouted the authority of the court by refusing to be deposed to a degree constituting bad faith and "repeatedly, without excuse, and with full notice of the possible consequences of her actions, refused to comply with two discovery orders," which caused plaintiff significant prejudice as to the inability to obtain critical information as well as time and effort, and where the court found an award of attorney fees would not be "commensurate with the extent of defendant's bad faith" and it would likely be "ineffectual given [her] failure to pay her own counsel"); *Moser*, 168 F.R.D. at 173-74 (entering default judgment for failure to comply with discovery orders where defendants "not only failed to comply with proper discovery requirements, but also had flouted the jurisdiction of the Court and unduly swelled the record with irrelevant documents" which "unduly burdened the record and caused both the Court and the United States significant additional work and expense by their refusal to comply with the rules and orders of this Court").
As to Plaintiff's request that the Court preclude Globe from offering evidence supporting its affirmative defenses to its claims, the Court notes that Square D only requests the same in passing at one point in its motion but does not request the same in its conclusion, or prayer for relief. (*See* Docket No. 187 at 3, 13). Nevertheless, Plaintiff does not specify which affirmative defense or defenses it seeks to preclude and thus, the Court declines to grant such relief, at this time.

13

at approximately 4:23:33 p.m. (*See* Docket No. 194-2 at 5). Third and finally, Globe contends that the "Notice of Continued Inspection" was "unnecessary" based upon the agreement of the parties. (Docket No. 189-2 at ¶20). However, given the history of this case, continued documentation is preferred, if not necessary.

## CONCLUSION

Accordingly, based on the foregoing, the Court **GRANTS in part and DENIES in part** Square D Company's Motion to Compel Against Globe Electric Supply Co. and For Rule 37(B) Sanctions [187]. The Court grants said motion to the extent Square D seeks an order compelling Globe to submit to a forensic inspection of its remaining computer systems (including the (eleven) 11 remaining workstations) and mandating that Globe allow any imaged and copied data to be removed from Globe's premises by Square D's forensic consultant for further querying based on agreed-upon search terms. Furthermore, consistent with this Court's past orders, Defendant Globe shall bear all costs and expenses related to all of the forensic inspections.[13] The Court denies Square D's motion without prejudice and with leave to re-file (if necessary) to the extent Square D seeks default judgment against Defendant Globe. Likewise, for the same reasons, the Court **DENIES in all respects** Defendant Globe's "Cross-Motion Seeking Order Directing Square 'D' to Complete Forensic Inspection in the Manner Previously Ordered by this Court which Limited Same to 'Systems' Involved in the 'Purchase, Sale, or Inventory' of Square 'D' Merchandise" [189].

In conclusion, while the Court has previously spoken of its frustration regarding the discovery

---

[13] Within ten (10) days after the completion of the forensic inspection, Plaintiff shall file an affidavit(s) detailing its costs, expenses, and fees with all necessary supporting documentation and the Court will review the same for reasonableness.

process in this case, it is becoming clearer to this Court that Defendant Globe and its counsel bear much of the responsibility for the continual and unreasonable delays in effectuating the Court-ordered forensic inspection and for the other delays in the discovery process in this case. With that in mind, the Court wishes to impress upon Globe and its counsel that any further restrictions unilaterally imposed by it or its counsel on the forensic inspection (in any regard) as well as any other baseless barriers impeding the completion of discovery will be met with sanctions. The Court shall conduct a post-inspection status conference on August 19, 2008 at 10:00 a.m. and counsel shall appear *in-person*. The Court advises the parties that if additional discovery disputes arise, the Court may require them to utilize a special master, with costs to be borne by the parties.

*s/ Nora Barry Fischer*
Nora Barry Fischer
United States District Judge

cc: All counsel of record.

Date: July 15, 2008.