**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

SQUARE D COMPANY,                    )
                                     )
          Plaintiff,                 )
                                     )
     vs.                             )          Civil Action No. 06-00459
                                     )          Judge Nora Barry Fischer
SCOTT ELECTRIC COMPANY, ET AL.,      )
                                     )
          Defendants.                )

Nora Barry Fischer, District Judge

## MEMORANDUM OPINION

## I. INTRODUCTION

Before this Court is Defendants Any Electric LLC ("Any Electric") and Steven Mandel's ("Mandel") Motion to Dismiss for Lack of Jurisdiction (Docket No. 155), filed on February 25, 2008. For the foregoing reasons, Defendants' motion [155] is hereby **DENIED**.

## II. BACKGROUND AND PROCEDURAL HISTORY

The relevant factual background and procedural history pertinent to the instant motion are as follows. Plaintiff Square D is a manufacturer and supplier of electrical distribution products for both consumer and commercial applications. Defendant Any Electric sold industrial electric supplies, including circuit breakers, through an online business.[1] This case involves the alleged purchase, importation, sale, and distribution of counterfeit Square D circuit

---

[1] Any Electric filed Articles of Dissolution with the New York Secretary of State on August 9, 2007. (Dock et No. 156). Steven Mandel was the sole employee and majority shareholder of Any Electric. (Docket No. 198, Ex. B at 125). According to Mandel, Any Electric used the following mailing addresses: 836 Hempstead Turnpike, West Hempstead, NY; 2289 Third Ave., New York, NY; and 205 W. 88th, New York, NY. (Docket No. 220, Ex. E at 50-52).

breakers by (among others) Any Electric and a closely-related company, Globe Electric Co. ("Globe").

On June 29, 2006, the Plaintiff filed an Amended Complaint against Scott Electric Company, Edward Vaught d/b/a/ ABN Direct, and Globe Electric Company. (Docket No. 31). Square D later discovered records indicating that Any Electric was involved in the alleged importation of counterfeit Square D circuit breakers, and filed a Second Amended Complaint naming Any Electric and Steven Mandel as defendants on November 28, 2007. (Docket No. 116). Square D has alleged that the counterfeit goods in question were manufactured in China by Jiangxi Sunhong Electric Co. ("Sunhong") and delivered to the Moving Defendants. (*See* Docket No. 198, Ex. G).

Any Electric and Mandel (the "Moving Defendants") filed the instant motion on February 25, 2008. (Docket No. 155). On March 12, 2008, Square D filed a Motion for Leave to Conduct Discovery regarding personal jurisdiction (Docket No. 162), which this Court granted by Memorandum Order dated April 25, 2008. (Docket No. 178). The parties were given until June 25, 2008 to complete discovery pertaining specifically to the issue of personal jurisdiction. *Id*. On June 27, 2008, Square D filed a Motion to Compel deposition testimony from Steven Mandel and Any Electric. (Docket No. 188). Any Electric and Mandel filed a Brief in Opposition to Square D's Motion to Compel on July 3, 2008. (Docket No. 192). By Memorandum Order dated July 8, 2008, this Court granted Square D's Motion to Compel the deposition testimony of Any Electric and Mandel. (Docket No. 193). Specifically, the Court ordered:

> Any Electric and Steven Mandel shall re-appear for deposition and answer
> questions relating to (1) whether Any Electric was an alter ego of Globe, and (2)

Defendants' knowledge (if any) of their participation in the alleged civil conspiracy involving Any Electric, Mandel and Globe as related to the Commonwealth of Pennsylvania, as well as all other questions related to personal jurisdiction over Any Electric and Steven Mandel.

*Id.* On July 23, 2008, Square D filed a response to the Moving Defendants' Motion to Dismiss. (Docket No. 198).

Thereafter, on August 7, 2008, Any Electric and Mandel filed a reply in support of their Motion to Dismiss for Lack of Jurisdiction. (Docket Nos. 202-203) As part of an Order dated August 19, 2008, this Court requested additional briefing in regard to the potential transfer of this case to the Eastern District of New York given the language in Square D's brief suggesting the same. (Docket No. 204). The Moving Defendants filed a Supplemental Brief in further support of their Motion to Dismiss on September 5, 2008. (Docket No. 208). On September 10, 2008, Defendant Scott Electric Company ("Scott") filed a Brief in Opposition to the potential transfer of this litigation. (Docket No. 210). On September 17, 2008, Square D filed a Supplemental Brief in Opposition to the Motion to Dismiss. (Docket No. 212). The Moving Defendants then filed a Reply Brief in Further Support of the Motion on September 22, 2008. (Docket No. 215).

The Court heard oral argument on the instant motion on September 23, 2008. Following same, the Court held a status conference on September 26, 2008 at which time the Court requested an affidavit from Any Electric's principal, Steven Mandel, in light of the discovery of

website information pertaining to Any Electric, LLC. (Docket No. 218).[2]  Square D then filed a

Second Supplemental Brief in Opposition to the Motion to Dismiss.[3]  (Docket No. 220).

## III.  STANDARD OF REVIEW

Pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, a court may dismiss a

complaint for lack of jurisdiction over the person.  FED.R.CIV.P. 12(b)(2).  A defendant bears the

initial burden of raising a lack of personal jurisdiction defense.  *See* FED.R.CIV.P. 12(h)(1);

*National Paintball Supply, Inc. v. Cossio*, 996 F.Supp. 459, 460 (E.D. Pa. 1998).  However,

"[w]here the defendant has raised a jurisdictional defense, the plaintiff bears the burden of

establishing either that the cause of action arose from the defendant's forum-related activities

(specific jurisdiction) or that the defendant has 'continuous and systematic' contacts with the

forum state (general jurisdiction)."  *Mellon Bank (East) PSFS, N.A. v. DiVeronica Bros., Inc.*,

983 F.2d 551, 554 (3d Cir. 1993) (citations omitted).  "The plaintiff meets this burden and

presents a prima facie case for the exercise of personal jurisdiction by establishing with

reasonable particularity sufficient contacts between the defendant and the forum state." *Mellon*

*Bank (East) PSFS, Nat. Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992) (internal quotation

and citations omitted); *see also Saudi v. Acomarit Maritimes Services, S.A.*, 245 F.Supp.2d 662,

667 (E.D. Pa. 2003).  "Once the plaintiff has made out a prima facie case in favor of personal

---

[2]

The website information discussed during the teleconference and the affidavit filed by Mandel (Docket No. 219) were not considered in ruling on the instant motion as they do not concern the Moving Defendants' contacts with the Commonwealth of Pennsylvania.

[3]

The factual details contained in Plaintiff's brief and the new evidence of sales between Any Electric and Globe contained therein are more fully discussed in Section IV.  *See infra* at n. 16.  As the Moving Defendants have not had time to respond to the evidence presented in said brief, the Court will not consider it in ruling on the instant motion.

jurisdiction, the defendant 'must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *Carteret Sav. Bank v. Shushan*, 954 F.2d 141, 150 (3d Cir. 1992) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1986)).

When deciding a motion to dismiss for lack of personal jurisdiction, the Court accepts as true all allegations in the complaint. *Chocallo v. I.R.S. Dept. of the Treasury*, Civil Action Nos. 04-3737, 06-539, 2007 WL 2071880, at *8 (E.D. Pa. July 16, 2007) (citing *Dayhoff, Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1302 (3d Cir. 1996)).  Nevertheless, "a plaintiff may not solely rely on bare pleadings to satisfy his jurisdictional burden.  Rather, the plaintiff must offer evidence that establishes with reasonable particularity sufficient contact between the defendant and the forum state to support jurisdiction." *Poole*, 122 F.Supp.2d at 557 (citing *Carteret Savings Bank, F.A. v. Shushan*, 954 F.2d 141, 146 (3d Cir. 1992)); *see also Dayhoff, Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1302 (3d Cir.1996) ("[O]nce a defendant has raised a jurisdictional defense, a plaintiff bears the burden of proving by affidavits or other competent evidence that jurisdiction is proper").  In fact, by its nature, a motion to dismiss under "Rule 12(b)(2) 'requires resolution of factual issues outside the pleadings, i.e., whether in personam jurisdiction actually lies.'" *Clark v. Matsushita Elec. Indus. Co., Ltd.*, 811 F.Supp. 1061, 1064 (M.D. Pa. 1993) (quoting *Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 66 n.9 (3d Cir. 1984)).  The United States Court of  Appeals for the Third Circuit in *Time Share Vacation Club* provided further explanation:

> Once the defense has been raised, then the plaintiff must sustain its burden of proof in establishing jurisdictional facts through sworn affidavits or other competent evidence.  Contrary to the dissent's suggestion, therefore, at no point may a plaintiff rely on the bare pleadings alone in order to withstand a

> defendant's Rule 12(b)(2) motion to dismiss for lack of jurisdiction. Once the
> motion is made, plaintiff must respond with actual proofs, not mere allegations.

*Time Share Vacation Club*, 735 F.2d at 66 n. 9.  At the same time, disputes of fact created by

affidavits and depositions "are generally resolved in favor of the non-moving party." *McMullen*

*v. European Adoption Consultants, Inc.*, 129 F. Supp. 2d 805, 810 (W.D. Pa. 2001) (quoting

*Elbeco Inc. v. Estrella de Plato, Corp.*, 989 F. Supp. 669, 673 n. 3 (E.D. Pa. 1997)).

## IV.  DISCUSSION

### A.  Personal Jurisdiction

When determining whether personal jurisdiction exists, the court must resolve the

question based on the circumstances that the particular case presents.  *Burger King Corp.*, 471

U.S. at 485.  The determination of personal jurisdiction over a defendant requires a two-step

inquiry.  First, a court must determine whether the long-arm statute of the forum allows courts of

that state to exercise jurisdiction over the defendant.  FED.R.CIV.P. 4(e)(1).  Second, if the forum

state allows jurisdiction, the court must determine if exercising personal jurisdiction over the

defendant is consistent with the Due Process Clause of the United States Constitution.  *See IMO*

*Industries, Inc. v. Kiekert AG*, 155 F.3d 254, 259 (3d Cir. 1998).

The Pennsylvania long-arm statute provides that jurisdiction may be exercised "to the

fullest extent allowed under the Constitution of the United States and may be based on the most

minimum contact with this Commonwealth allowed under the Constitution of the United States."

42 Pa. C.S.A. § 5322(b) (1981).  Because the Pennsylvania long-arm statute is coextensive with

the dictates of the United States Constitution, this Court's "jurisdictional inquiry turns

exclusively on whether the exercise of personal jurisdiction would conform with the Due Process

Clause." *Poole v. Sasson*, 122 F.Supp.2d 556, 558 (E.D. Pa. 2000); *see also Mickelburgh*

*Machinery Co., Inc. v. Pacific Economic Development Co.*, 738 F.Supp. 159, 161 (E.D. Pa. 1990).

Due process requires that the defendant have "minimum contacts" with the forum state. *Remick v. Manfredy*, 238 F.3d 248, 255 (3d Cir. 2001) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). "Minimum contacts must have a basis in 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws.'" *Remick*, 238 F.3d at 255 (quoting *Asahi Metal Indus. Co., Ltd. v. Superior Court of California*, 480 U.S. 102, 109 (1987) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985))).

Once minimum contacts are established, the court must decide whether the exercise of personal jurisdiction over the defendants would comport with "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). In making this determination, courts can consider "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." *Burger King*, 471 U.S. at 477 (quoting *World-Wide Volkswagen*, 444 U.S. at 292). If the plaintiff establishes a prima facie case of a defendant's minimum contacts, it is the defendant's burden to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Grand Entertainment Group, Ltd. v. Star Media Sales*, 988 F.2d 476, 483 (3d Cir. 1993) (quoting *Burger King*, 471 U.S. at 477).

In their Motion to Dismiss, Defendants Any Electric and Mandel argue that this Court has neither general nor specific jurisdiction over them. (Docket No. 157, at 6-13). In response, Square D argues that this Court may exercise specific jurisdiction over Any Electric and Mandel. (Docket No. 198 at 1). As Square D's arguments focus solely on specific jurisdiction, the Court will not address the issue of general jurisdiction.

### 1. Specific Jurisdiction[4]

"[S]pecific jurisdiction exists when the events giving rise to the action are related to the forum state and the defendant has minimum contacts with the forum state." *Poole*, 122 F.Supp.2d at 558 (citing *Helicopteros Nacionales de Colombia*, 466 U.S. at 414 n.8). Specific jurisdiction is established where the defendant "purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that 'arise out of or relate[ ] to' those

---

[4]    While the Moving Defendants analyze personal jurisdiction according to each count of the Complaint, the United States Court of Appeals for the Third Circuit has held that such an inquiry is not necessary where, as here, the counts of the complaint are based on the same facts. *See O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 316 (3d Cir. 2007). Square D's Amended Complaint alleges the sale of counterfeit goods in violation of the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a)(1), tortious interference with contracts, tortious interference with existing and prospective business relations, civil conspiracy, and spoliation of evidence. (Docket No. 116). With the exception of spoliation of the evidence, each of the counts alleged in the Complaint are based on Any Electric and Steven Mandel's alleged sale of counterfeit Square D products to customers in Pennsylvania and their alleged conspiracy with Globe Electric to do the same. Therefore, because the "claims together represent the total damages suffered ... as a result of the [Moving Defendants' conduct] ...we need not analyze them separately." *Id.* at 316 (quoting *Scattaregia v. Wu*, 343 Pa.Super. 452, 495 A.2d 552, 554 (1985)); *see also Remick v. Manfredy*, 238 F.3d 248, 255-56 (3d Cir.2001); *Erinc v. Karavil*, Civ. A. No. 00-5729, 2001 WL 1143314, at *5, n. 36 (E.D. Pa. Sept. 27, 2001). Furthermore, in regard to the spoliation claim, insofar as the claim involves the alledged destruction of evidence related to Square D's claims regarding the sale of counterfeit Square D products, and because the alleged spoliation took place after the filing of the lawsuit, this Court maintains jurisdiction over that claim.

activities." *BP Chemicals Ltd. v. Formosa Chemical & Fibre Corp.*, 229 F.3d 254, 259 (3d Cir. 2000) (quoting *Burger King*, 471 U.S. at 472 (1995)). "[W]hen an entity intentionally reaches beyond its boundaries to conduct business with foreign residents, the exercise of specific jurisdiction is proper." *Zippo Mfg. Co. v. Zippo Dot Com*, Inc., 952 F. Supp. 1119, 1124 (W.D. Pa. 1997) (citing *Burger King*, 471 U.S. at 475).

The Moving Defendants argue that because their "only connection with Pennsylvania was an insubstantial number of product sales" and because Plaintiff's claims concern "the alleged importation of counterfeit circuit breakers from Sunhong, none of which were ever sold or transported to Pennsylvania," there is no specific jurisdiction in this case. (Docket No. 157 at 9-10). In response, Square D argues that this Court may exercise specific jurisdiction over Any Electric and Mandel because of the following: (1) Any Electric, through Defendant Mandel, used its website to target customers in Pennsylvania and sold potentially counterfeit Square D circuit breakers in Pennsylvania; (2) a substantial part of the events giving rise to the claim for civil conspiracy between Defendant Global Electric and Defendant Any Electric took place in Pennsylvania; and (3) Defendant Any Electric was the alter ego of Global Electric, a company already subject to this Court's jurisdiction. (Docket No. 198 at 1).

Thus, the Court must determine whether: 1) the Plaintiff has provided evidence of the Moving Defendants' "minimum contacts" with the Commonwealth of Pennsylvania; 2) the instant litigation is related to at least one of those activities; and 3) the exercise of jurisdiction is reasonable in this case. *See O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d Cir. 2007).

### a. Minimum Contacts

*i. Any Electric's Website and Sales in Pennsylvania*

Central to this case is whether Any Electric purposely availed itself of the laws and privileges of the Commonwealth of Pennsylvania through its website and sales. Square D argues that the Moving Defendants' online business, in combination with their sales to Pennsylvania residents, give this Court personal jurisdiction over Any Electric and Mandel. In response, the Moving Defendants argue that the internet activities of the Moving Defendants amounted to nothing more than the exchange of information by e-mail which is not, under Third Circuit case law, enough to confer jurisdiction. *Arg't. Trans*., Sep. 23, 2008 at 6-7. Furthermore, the Moving Defendants argue that their sales in Pennsylvania do not confer specific jurisdiction upon this Court because the circuit breakers sold by Any Electric into the Commonwealth are not the type at issue in this case. *Arg't. Trans*., Sep. 23, 2008 at 72.

"If a defendant web site operator intentionally targets the site to the forum state, and/or knowingly conducts business with forum state residents via the site, then the 'purposeful availment' requirement is satisfied." *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 452 (3d Cir. 2003). The seminal case on this issue, *Zippo Mfg. Co. v. Zippo DOT Com*, 952 F.Supp. 1119 (W.D. Pa. 1997), directs this Court to use a sliding scale to determine whether jurisdiction is appropriate, based on Any Electric's website activities. *Id*. at 1124; *see also Toys "R" Us*, 318 F.3d at 452 (3d Cir. 2003).

> At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive Web site that

does little more than make information available to those who are interested in it is not grounds for the exercise of personal jurisdiction. The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site.

*Zippo*, 952 F.Supp. at 1124 (internal citations omitted).

The Plaintiff must also provide evidence of "the intentional nature of the defendant's conduct vis-a-vis the forum state." *Toys "R" Us, Inc.*, 318 F.3d at 452. "[T]here must be some evidence that the defendant 'purposefully availed' itself of conducting activity in the forum state, by directly targeting its website to the state, knowingly interacting with residents of the forum state via its website, or through sufficient other related contacts." *Id.* at 454. A court may also consider related non-internet activities such as business trips to the forum state, telephone and fax communications directed to the forum state, and advertisements in the forum state as part of the purposeful availment analysis. *Id*. at 453- 454.

Prior to its dissolution, Any Electric maintained a website, www.anyelectric.com. (Docket No. 198, Ex. A at 93). According to Steven Mandel, Any Electric was an internet business:

> Q.    What was Any Electric's business, Mr. Mandel?
> A.    Any Electric's business was an online business to resell electrical products into the market.

(Docket No. 198, Ex . H at 181). The website contained information about products offered for sale by Any Electric, including Square D Circuit breakers:

> Q.    If you look at page 1 on the top left of the pictures, what is the top left picture depicting?
> A.    The circuit breaker is a Square D circuit breaker.

(Docket No. 198, Ex. H at 179).

At issue is in this case is www.anyelectric.com's level of interactivity. Steven Mandel has testified that there was no way to make an order through Any Electric's website.[5] (Docket No. 198, Ex. A at 131). However, he further testified that the website provided information for placing an order for the products listed through a link to e-mail (sales@anyelectric.com) or by calling a toll-free number listed on the website:

> Q.  Was the Any Electric e-mail listed on the Any Electric Web site?
> A.  Yes, it was.
>     ...
> Q.  Did any of the sales to Pennsylvania originate through an e-mail?
> A.  As opposed to what?
> Q.  A purchase order, a fax or a phone call.
> A.  Every relation starts via e-mail or phone. So I don't know whether they called me or they e-mailed me. There's only two possibilities.
> Q.  Was there a phone number listed on the Any Electric Web site where you could be reached?
> A.  Yes, my 800 number.
>     ...
> Q.  With respect to any customer anywhere, including Pennsylvania, by listing an e-mail address on the Any Electric Web site, your intention was to provide a potential customer with a means of reaching you to place an order?
> A.  With a means of reaching me to request a price, not necessarily to place an order.
> Q.  Hopefully to place an order?
> A.  Yes, to request an item from me.
> Q.  And the same holds true for the 1-800 number; is that right?
> A.  Yes.

(Docket No. 198, Ex. A at 131-33).

---

5
    Where Mandel's testimony is inconsistent or in conflict with the evidence submitted by Plaintiff, the discrepancy must be resolved in favor of Square D. *McMullen v. European Adoption Consultants, Inc*., 129 F. Supp. 2d 805, 810 (W.D. Pa. 2001).

In addition to providing a number and e-mail address for the purpose of placing an order, Any Electric's website permitted a purchaser to submit a form specifying the manufacturer, catalog number, and quantity of the product to be purchased, as well as the purchaser's company name, phone, fax and e-mail. (Docket No. 198, Ex. D at 5). There was a space on the form for "comments," where customers could submit any type of additional information. The information on the form was then submitted to Any Electric through a "send" button. The page also contained the following "WARRANTY INFORMATION":

> [u]nless otherwise stated, all components of Any Electric LLC are warranted to be free from defect for a period of 12 months. This period begins from the time the invoice for that unit is generated. Any units found to be failing in either workmanship or material will be repaired or replaced or funds refunded less shipping charges at our discretion. This warranty is limited as set forth above, so that repair or replacement or funds refunded is the exclusive remedy. All consequential damage to property, loss of profit, or injury to a person is specifically excluded. Without limitation the above warranty shall not apply to items that have failed due to: misapplication, operation exceeding the rated capacities, abuse, negligence, improper storage, improper handling or installation, contaminates, acts of God or Nature. (Credit for returns or replacement is at the discretion of Any Electric.) You are responsible for shipping and proof of delivery on all returns; therefore, please retain all tracking information until we ship the new item. Thank you for your patience and understanding in this matter. Once the package has been delivered please allow 10 business days for your return to be processed. In order to receive quickest RMA number please call us at 866-269-7102. Penalties could result if these conditions are not met.

(Docket No. 198, Ex. D at 5).

After information was submitted through the "Contact Us" page, Mandel would respond to the inquiry provided that the visitor submitted sufficient contact information. (Docket No. 198, Ex. H at 171). Mandel testified that sales were completed through either the e-mail address listed on the website or by phone:

Q.      How were orders placed?

| A. | Through e-mail or through cell phone. |
| Q. | What was created in order to create an order? |
| A. | What was created? |
| Q. | Yes. |
| A. | There was nothing created. Just information that I needed to create and a verbal commitment that they were going to purchase this, and please send me the material or the product they were buying. |
| Q. | How did you confirm payment? |
| A. | I don't really confirm payment. |
| Q. | How did you document payment? |
| A. | I would take their credit card number and bill them. |

(Docket No. 198, Ex. H at 219).

The Moving Defendants have attempted to characterize the website as equivalent to the "national advertisements" one might find in a national publication (*Arg't. Trans.*, Sep. 23, 2008 at 29). However, the website is clearly more than mere advertising. By allowing a potential customer to submit information pertaining to a particular product, Any Electric's website allowed information to be exchanged with the company. *See Zippo*, 952 F.Supp. at 1124. The site allowed existing and potential customers to interact with Any Electric by submitting an inquiry about particular products, putting it in the "middle ground" of the *Zippo* scale. *Id.*

Although the Moving Defendants have argued the site is not interactive based on Mandel's testimony that there was no way to order a product through the website,[6] the evidence suggests that customers could commence the ordering process through the site.[7] For example,

---

[6]

In addition to the telephone number and e-mail listed on the site through which customers could place an order, the Court notes that it would have been possible for customers to submit price, payment and shipping information through the "comments" section. However, as Mandel has testified that he no longer has any e-mails or documentation related to www.anyelectric.com, it is not possible to review what type of information was actually submitted to Any Electric through the website form. (Docket No. 198, Ex. H at 197).

[7]

Again, as previously noted, to the extent that Square D has presented evidence that orders

Plaintiffs have produced images of the "Contact Us" form through which customers could provide much of the same type of information that would be required for an order (e.g., manufacturer, quantity, catalog number, contact information). Unlike a simple inquiry form, the "Contact Us" page also included a large section for "WARRANTY INFORMATION." Mandel has testified that when a visitor submitted information via the form, he responded to them if they had provided sufficient contact information. When a customer provided the requested information, Mandel responded to the customer; all that was needed to complete the order was for the customer to confirm the price, shipping, and payment information. (Docket No. 198, Ex. H at 173).

Having established that the level of interactivity of the website puts it in the middle of the *Zippo* spectrum, the Court must examine "the level of interactivity and commercial nature of the exchange of information" that occurred on the site. *See Id*. Plaintiff's evidence demonstrates that the interactions that occurred through the "Contact Us" page were highly commercial in nature. As previously noted, it permitted a potential customer to input a particular product found on the website, specify the manufacturer, and request a certain quantity. Further, the page contained the above quoted warranty pertaining to the products sold. Similar to the website at issue in *Zippo,* Any Electric's site allowed the submission of specific information for the purpose of engaging in commercial activity, namely a sale.[8] Regardless of whether the site permitted a

---

could be initiated through the website, any discrepancies with Mandel's testimony must be resolved in favor of Square D. *McMullen v. European Adoption Consultants, Inc*., 129 F. Supp. 2d 805, 810 (W.D. Pa. 2001).

[8]
  Q.  With respect to any customer anywhere, including Pennsylvania, by listing an e-mail address on the Any Electric Web site, your intention was to provide a potential customer with a means of reaching you to place an order?
  A.  With a means of reaching me to request a price, not necessarily to place an

buyer to input payment information in order to finalize a sale, the evidence presented by the Plaintiff, as well as Mandel's deposition testimony, demonstrate that interactions through the website were commercial in nature. The Court cannot determine the exact extent to which Mandel conducted business with Pennsylvania residents through the website and email because he has testified that he no longer has documentation or e-mails relating to www.anyelectric.com. (Docket No. 198, Ex. H at 197). However, Mandel himself has testified that Any Electric was an "online business" and has not presented any evidence that sales were not the result of customer interactions with the website. (Docket No. 198, Ex. H at 181). It is only logical then that sales in an "online business" would be related to the customer's use of the business' website where, as here, the company contesting jurisdiction has not claimed that sales were made through a third-party site or any other sales channel.[9] Accordingly, this Court must conclude that exchanges of information through the website were commercial in nature.

Having established that Any Electric's website is commercial and interactive, the Court must next determine whether the website was "designed or intended to reach customers" in Pennsylvania. *Toys "R" Us*, 318 F.3d at 454. The evidence presented by the parties suggests that the Moving Defendants purposefully availed themselves to conducting activity in this state

---

order.
Q.    Hopefully to place an order?
A.    Yes, to request an item from me.
Q.    And the same holds true for the 1-800 number; is that right?
A.    Yes.
(Docket No. 198, Ex. A at 131-33).

[9]

Mandel has testified that "there's a good chance" the sales in Pennsylvania were the result of Any Electric's internet advertising that directed people to the Any Electric website. (Docket No. 198, Ex. H at 198).

by "knowingly interacting with residents of [Pennsylvania] via its web site, or through sufficient other related contacts."  *Id.*

Steven Mandel testified at his deposition that, in maintaining a website, he was directing his advertising anywhere in the United States, including Pennsylvania:

> Q.    I think we went over this but to make it clear, was the intent behind www.anyelectric.com that anyone who wanted to reach Any Electric nationwide including Pennsylvania would be able to reach Any Electric?
> A.    Anyone nationwide.

(Docket No. 198, Ex. H at 170).  Mandel's efforts to solicit business in Pennsylvania yielded Any Electric twenty-four (24) Pennsylvania customers and a total of $10,238.25 in sales to those customers.  (Docket No. 198, Ex. A).[10]

In their brief and at oral argument, the Moving Defendants have relied on the Third Circuit Court of Appeals' decisions in *Vetrotex Certainteed Corporation v. Consolidated Fiber Glass Products Company*, 75 F.3d 146 (3d Cir. 1996) and *Toys 'R' Us, Inc. v. Step Two, S.A.*, 318 F.3d 446 (3d Cir. 2003) in support of their argument that this Court may not exercise specific jurisdiction over Any Electric and Mandel. The instant case is distinguishable from *Vetrotex* and *Toys 'R' Us* in several important ways.  First, in *Vetrotex*, the defendant was

---

10

The Moving Defendants have argued that because this amount of sales is less than 1% of Any Electric's total sales, the level of commercial activity related to the website is insufficient to establish minimum contacts.  *Arg't. Trans.*, Sep. 23, 2008 at 13.  While such an argument is valid in the context of general jurisdiction, in the context of specific jurisdiction it is evidence that supports Plaintiff's argument that the Moving Defendants purposefully availed themselves of the laws and privileges of Pennsylvania by selling and shipping products to residents of the Commonwealth.  *See L'Athene, Inc. v. Earthspring LLC,* Civ. A. No. 08-114, 2008 U.S. Dist. LEXIS 59992 (D. Del. Aug. 1, 2008).

"merely a passive buyer" from a seller in the forum state.  *Id*. at 152.  Here, there is no dispute that the Moving Defendants were sellers that maintained a website with the intention of marketing their products to customers throughout the United States.[11]  In doing so, Any Electric is easily distinguishable from the "passive buyer" in *Verotex*.  It is true that the Third Circuit Court of Appeals in *Vetrotex* recognized that "informational communications" between a resident and non-resident in connection with the formation of a contract alone were insufficient to establish personal jurisdiction.[12]  *Id.*  However, the facts of this case have established that the Moving Defendants not only maintained an interactive website through which Pennsylvania customers could begin the ordering process, they shipped products to customers in Pennsylvania. (Docket No. 198, Ex. A)  In contrast, in *Vetrotex* "no product was shipped from, through or to Pennsylvania."  *Id*. at 151.  Further, the Court of Appeals emphasized that the facts of the case were distinguishable from cases where, as here, "the defendant solicited the contract or initiated the business relationship leading up to the contract."  *Id.* (citing *Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217 (3d Cir. 1992).

Any Electric and Mandel further maintain that Any Electric's operation of a commercial website is insufficient to establish personal jurisdiction under *Toys "R" Us* because there is no evidence that the Moving Defendants "directly targeted its web site to the state."  *Toys "R" Us*, 318 F.3d at 454.  However, the Court of Appeals in that case also held that purposeful availment

---

11

      Mandel has testified that "[his] intention was to advertise on-line to whoever was on-line." (Docket No. 198, Ex. A at 130).

12

      Notably, the "informational communications" at issue in *Vetrotex* were in no way related to a website or the internet.  Rather, the communications at issue were a limited number of letters and phone calls.  *Vetrotex*, 75 F.3d at 152.

can also be demonstrated through evidence that the moving defendant "knowingly interact[ed] with residents of the forum state via its website, or though sufficient other related contacts." *Id*. In *Toys "R" Us*, the Court found that the defendants had not knowingly interacted with residents of New Jersey when an e-mail from a customer located in that state did not provide his full address, and the correspondence from the company indicated that the defendant's representatives were confused about his place of residence. In contract, the evidence in this case shows that the Moving Defendants shipped products to twenty-four (24) customers in Pennsylvania, and that Mandel himself was on notice of their addresses because he was the one who confirmed shipping information. (Docket No. 198, Ex. H at 173). Furthermore, the Plaintiff has presented evidence that the "Contact Us" form submissions provided Mandel a mechanism through which he could interact with customers in Pennsylvania, and he has testified that he responded to users who used the "Contact Us" form when they provided sufficient information. Rather than present any evidence that sales from Pennsylvania were not derived from the website, Mandel testified that he has "no way of knowing" whether those were initiated through the "Contact Us" form because he is no longer in possession of the documentation relating to the website or www.anyelectric.com e-mails. (Docket No. 198, Ex. H at 197). The court in *Toys "R" Us* also distinguished the facts of that case from cases where, as here, the defendant collected revenue and recorded sales of goods from customers located in the forum state. *Toys "R" Us*, 318 F.3d at 453 (discussing *Euromarket Designs, Inc. v. Crate and Barrel Ltd*., 96 F. Supp. 2d 824 (N.D. Ill. 2000)).

The Moving Defendants have also cited several Pennsylvania district court cases in support of their contention that Any Electric's website does not meet the threshold for

purposeful availment.  (Docket No. 157) (citing *Blackburn v. Walker Oriental Rug Galleries, Inc.*, 999 F.Supp. 636 (E.D. Pa. 1998); *Morantz, Inc. v. Hang & Shine Ultrasonics, Inc.*, 79 F.Supp.2d 537 (E.D. Pa. 1999); *Grutkowski v. Steamboat lake Guides & Outfitters, Inc.*, No. Civ. A. 98-1453, 1998 WL 962042, at *1-7 (E.D. Pa. Dec. 28, 1998).

In *Blackburn v. Walker*, the Eastern District of Pennsylvania held that "[c]reating a Web Site may be felt nation or even world wide, but without more, it is not any act purposefully directed toward the forum." *Blackburn*, 999 F.Supp. at 639 (citing *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 418 (9th Cir. 1997)).  Likewise, in *Morantz, Inc. v. Hang & Shine Ultrasonics*, Inc., the Court held that, for a website to confer jurisdiction, "there must be 'something more' than a mere website to justify the exercise of personal jurisdiction." *Morantz*, 79 F.Supp. 2d at 541 (citations omitted).  In *Grutkowski v. Steamboat Lake Guides & Outfitters, Inc.*, the Court also found that, "[t]he e-mail links which permit readers to send questions to [defendant] are the only interactive elements … and … are insufficient to make these pages more than advertisement." *Grutkowski*, 1998 WL 962042, at * 14.

These cases are instructive, but they are factually distinguishable from the instant case. Any Electric's "Contact Us" page permitted the potential customer to begin an order by identifying a particular product, manufacturer, and quantity needed.  The page also contained a warranty pertaining to the products sold.  The information was then submitted through the website itself; unlike the aforementioned cases, it did not direct users to a separate e-mail link through which a customer sent inquiries through his or her own e-mail program.  More importantly, the courts in those cases were not able to exercise personal jurisdiction over the defendants because the plaintiffs were not able to provide evidence of "something more" than a

passive website.  Here, Mandel has characterized Any Electric as an "online business," he advertised through Internet ads that directed potential customers to the website, the website contained a form though which customers can begin an order, and he knowingly sold products to customers in Pennsylvania.  None of these facts in isolation would be sufficient for a finding of minimum contacts; however, the combination of these contacts makes them sufficient to confer jurisdiction.  *See Toys "R" Us*, 318 F.3d at 453.

The Moving Defendants' sales are also not the "kind of 'fortuitous,' 'random,' and 'attenuated' contacts the Supreme Court has held insufficient to warrant the exercise of jurisdiction." *Toys "R" Us*, 318 F.3d at 455 (quoting *Burger King*, 471 U.S. at 475).  Plaintiff's evidence and Mandel's own testimony have demonstrated that Any Electric's sales in general and to Pennsylvania in particular were a product of its website.  The website was more than a mere advertisement; rather, it was an interactive site that allowed customers to take the first step in an ordering process that could be completed with one phone call or e-mail.  By knowingly selling and shipping a product that is at issue in this litigation to a customer Pennsylvania, the Moving Defendants purposefully availed themselves of the laws and privileges of this forum.  As the court noted in *Zippo*, "[i]f [the defendant] had not wanted to be amenable to jurisdiction in Pennsylvania, the solution would have been simple - it could have chosen not to sell its [products] to Pennsylvania residents." *Zippo*, 952 F.Supp. at 1126-7.

### ii.  Civil Conspiracy and Alter Ego

Having determined that this Court may exercise jurisdiction on the basis on Any Electric's website activities and sales to Pennsylvania, the Court will not address Plaintiff's alter ego and civil conspiracy theories of jurisdiction.  However, as described in the foregoing

analysis, Plaintiff's evidence related to the alleged civil conspiracy between Globe and the Moving Defendants is informative to this Court's inquiry as to whether the exercise of jurisdiction is reasonable in this case.[13]

### b. **The Relatedness Requirement**

The Court also finds that Plaintiff's claims "arise out of or relate to" the Moving Defendants' aforementioned contacts with the Commonwealth of Pennsylvania. *Helicopteros*, 466 U.S. at 414. Plaintiff has brought a claim based on the illegal sale of counterfeit Square D circuit breakers in this Commonwealth, and have represented that at least one of the circuit breakers sold by Any Electric in Pennsylvania was part of the line that is at issue in this case.[14] While the Moving Defendants have argued that this is not sufficient to confer jurisdiction, even one related contact can give rise to specific jurisdiction. *See O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 321 (3d Cir. Pa. 2007); *Cf. Precimed S.A. v. Orthogenesis*, Inc., Civ. A. No. 04-1842, 2004 U.S. Dist. LEXIS 23357 (E.D. Pa. Nov. 17, 2004). Square D has put forth

---

[13]

The Court notes that if the newly discovered evidence relating to sales between Defendants Globe and Any Electric is accurate, this evidence would further support Plaintiff's argument for personal jurisdiction based on the alleged civil conspiracy between Globe and Any Electric. (*See* Docket No. 220).

[14]

*See Arg't. Trans.*, Sep. 23, 2008 at 49. The Moving Defendants argue that Plaintiff's claims in this regard fail because they have not provided evidence that the circuit breaker in question is actually a counterfeit. However, such a determination goes to the merits of the case and was not within the scope of jurisdictional discovery. In addition, Plaintiff has presented evidence that during the time period in question: 1) Globe was the Moving Defendants' primary supplier; 2) Globe supplied Scott with counterfeit circuit breakers (Docket No. 198, Ex. F); and 3) Any Electric shipped two circuit breakers (which it claims were authentic Square D products) to residents of Pennsylvania. To the extent this evidence conflicts with Mandel's testimony, the Court must interpret the facts in the light most favorable to the Plaintiff. *See McMullen v. European Adoption Consultants*, Inc., 129 F. Supp. 2d 805, 810 (W.D. Pa. 2001).

evidence that Mandel, through Any Electric, imported counterfeit Square D circuit breakers from Sunhong. The evidence of record also indicates that after those shipments took place, Any Electric sold a circuit breaker that is of the type at issue in this litigation to a citizen of Pennsylvania. (Docket No. 198, Ex. F, G). If Square D's allegations are true, the Moving Defendants, as sellers of a counterfeit good to a Pennsylvania resident, should have been on notice that they would have to defend a claim against them arising from that sale, as the Commonwealth has a clear interest in protecting its residents from potentially dangerous counterfeit goods. *See Osteotech, Inc. v. GenSci Regeneration Sciences*, 6 F. Supp. 2d 349, 355 (D. N.J. 1998).

### c. Traditional Notions of Fair Play and Substantial Justice

Having established Any Electric and Mandel's minimum contacts with the Commonwealth of Pennsylvania, this Court must decide whether the exercise of personal jurisdiction over the Moving Defendants would comport with "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). In making this determination, the Court looks to:

> the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies.

*Burger King*, 471 U.S. at 477 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S., at 292). However, as the Plaintiffs have made a prima facie case for minimum contacts, the Moving Defendants must present "a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Id.* Mandel and Any Electric have not

presented evidence that they would be unduly burdened by defending an action here. Although the Moving Defendants would presumably be burdened to some extent by having to travel from New York to Pennsylvania, there are other factors that weigh in favor of this Court exercising jurisdiction over the Moving Defendants.

Square D has presented evidence[15] to this Court that the Moving Defendants were involved in a conspiracy to import counterfeit Square D circuit breakers into the United States for sale and distribution to the residents of several states, including Pennsylvania.[16] The events

---

[15]
Specifically, Square D has offered evidence, in the form of deposition testimony, that the counterfeit circuit breakers sold by Defendant Scott Electric in Pennsylvania were sold to Scott by Defendant Globe. (Docket No. 198, Ex. F). The Plaintiff has also submitted evidence that the Moving Defendants imported counterfeit Square D circuit breakers during the same time period Globe allegedly sold the counterfeit circuit breakers to Scott. (*Id.* at Ex. G). Moreover, as previously discussed, Square D alleges that at least one of the circuit breakers sold in Pennsylvania by the Moving Defendants is of the type at issue in this litigation. Discovery regarding Square D's claims against the Moving Defendants has been limited to the issue of jurisdiction. However, the evidence at this point indicates that Mandel knew or should have known about these sales given his concurrent employment with Globe and his close family connection to Globe's principals. While the Moving Defendants have argued that Plaintiff has not provided this Court with evidence of a conspiracy, Square D has established the aforementioned facts through company records and deposition testimony. Again, this Court has not conducted an evidentiary hearing. Accordingly, where factual evidence is in dispute, the dispute must be resolved in favor of the non-moving party. *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 323 (3d Cir. 2007). To the extent that certain aspects of the conspiracy remain allegations, this does not diminish the evidence presented by the Plaintiff given the limited scope of discovery.

[16]
Plaintiff, through discovery in its suit against Defendant Globe, recently discovered sales records that it claims show Any Electric sold 40,000 potentially counterfeit Square D circuit breakers to Globe during the time period in question. (Docket No. 220 at 1-2). As the Moving Defendants have not had time to respond to this new evidence, the Court will not consider same in ruling on the instant motion. Furthermore, as the Court is denying the Moving Defendants' motion based on the evidence previously presented by the parties, the newly submitted evidence would not change this Court's ruling. If the new evidence does support Plaintiff's claims that Any Electric sold counterfeit circuit breakers to Globe, which, in turn, were sold to Defendant Scott, such evidence would likely provide an *additional* basis on which this Court could exercise personal jurisdiction over the Defendants. *See Pennzoil Prods. Co. v. Colelli & Assocs.*, 149 F.3d 197, 207 (3d Cir. 1998) (holding a company may purposefully avail itself to the laws of Pennsylvania by

giving rise to this suit took place in western Pennsylvania, and one of the Plaintiff's key witnesses, Kenneth Vojnik, resides here. (Docket No. 198, Ex. F). If the Plaintiff was forced to re-file this suit in another district, in front of a judge who is not familiar with the long, convoluted, preceding years of this litigation, it would certainly harm the Plaintiff's interest in convenient and effective relief.[17] Furthermore, as the Court has noted on several occasions, the instant action was filed in this District because the counterfeit goods in question potentially pose a danger to the public and were sold to residents of this Commonwealth. *See Lapeire v. Volkswagen AG*, 698 F. Supp. 95, 98-99 (E.D. Pa. 1988). Accordingly, Pennsylvania is an appropriate forum for litigating the claims before this Court.

Finally, the Court emphasizes that the overarching question in deciding this motion is whether Any Electric and Steven Mandel should have "reasonably anticipated being haled into court [here]." *Vetrotex*, 75 F.3d at 151 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). There are facts separate from Any Electric's website and sales to Pennsylvania that indicate that the answer is yes. Square D brought this suit against Defendant

---

deriving financial benefits from their customer's sales to residents of the Commonwealth).

[17]
    The Court is particularly concerned with the conduct of discovery in this matter as it relates to Defendant Globe and the Moving Defendants. Specifically, Judge Thomas M. Hardiman entered an Agreed Order for Temporary Injunctive Relief between Plaintiff and Defendant Globe (Docket No. 38) on **August 21, 2006.** This Court has previously found Globe in contempt of that Order (Docket No. 110), and many of the ongoing discovery disputes relate to Globe's production of the names of its suppliers and customers of Square D products pursuant to said Order. (*See, e.g.*, Docket Nos. 52, 70, 197, 214, 220). While Plaintiff has produced sufficient evidence that this Court's jurisdiction over the Moving Defendants is proper, the Court notes that insofar as the Moving Defendants' arguments for dismissal were based on a lack of evidence that Any Electric supplied counterfeit Square D products to Globe (*Arg't. Trans.*, Sep. 23, 2008 at 13), the Court cannot make such a determination until Globe fully complies with the Court's discovery orders.

Globe on June 29, 2006 (Docket No. 31). At that time, Steven Mandel had been an employee of Globe for approximately two years, and his brother, Avi Mandel, and father, Joel Mandel, were both principals of Globe. (Docket No. 198, Ex. A at 106). Concurrent with his employment at Globe, Steven Mandel operated Any Electric, a company he created at the suggestion of his father. (*Id.*, Ex. B at 121.) Steven Mandel conducted Any Electric business out of Globe's offices, and Globe was also Any Electric's main supplier. (Docket No. 202, Ex. A at 201). The record indicates that these are family-owned and operated business that were closely-related. Given the close familial and employment relationships between the two companies and the intense nature of the litigation between Globe and Square D, in this Court's estimation, it is highly unlikely that Steven Mandel was unaware of Square D's suit against Globe and the allegations contained in its Amended Complaint.[18] Yet, even after Globe was named as a Defendant, Any Electric continued to market and sell its products to Pennsylvania customers, including a Square D product that is at issue in this litigation. (Docket No. 198, Ex. E at 3-4). Under these circumstances, the Moving Defendants should have known that they could potentially be haled into this Court. *Vetrotex*, 75 F.3d at 151. As previously noted, if Any Electric and Mandel did not want to be subject to jurisdiction in Pennsylvania, they could have refrained from selling products to residents of Pennsylvania. *Zippo*, 952 F.Supp. at 1126-7.

---

[18] As previously discussed and as evidenced by the docket, Plaintiff and Defendant Globe have ongoing disputes related to the Agreed Order for Temporary Injunctive Relief, discovery, and alleged spoliation of evidence. (*See* Docket Nos. 39-202). As early as August 2007, Defendant Globe and its principals were aware that the Court had ordered Globe to produce the names of Globe's customers and suppliers of Square D circuit breakers. (Docket Nos.38).

**B. Transfer of Square D's Claims Against Any Electric and Mandel**

In light of the Court's decision to deny the Defendants' Motion to Dismiss, the parties' arguments for and against transfer to the Eastern District of New York are now moot.

**V. CONCLUSION**

In conclusion, this Court's exercise of personal jurisdiction over the Moving Defendants is proper. Accordingly, Defendants Any Electric and Steven Mandel's Motion to Dismiss for Lack of Jurisdiction [155] is **DENIED.** An appropriate Order follows.

*s/ Nora Barry Fischer*
Nora Barry Fischer
United States District Judge

Dated: September 30, 2008.
cc:     All counsel of record.