IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SQUARE D COMPANY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Civil Action No. 06-00459 |
| ) | Judge Nora Barry Fischer |
| SCOTT ELECTRIC COMPANY, ET AL., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM ORDER

This matter is before the Court on Defendant Steven Mandel's ("Defendant") Motion for Reconsideration [227] of the Court's Memorandum Opinion denying his motion to dismiss for lack of personal jurisdiction (Docket No. [155]). For the following reasons, said motion is hereby **DENIED**.[1]

## I. LEGAL STANDARD

The purpose of a motion for reconsideration "is to correct manifest errors of law or fact or to present newly discovered evidence." *Max's Seafood Cafe by Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. N.J. 1999) (quoting *Harsco Corp., v. Zlotnicki*, 779 F.2d 906 (3d Cir. 1985)). When considering interlocutory orders, the district courts possess inherent power to "reconsider them

---

[1] As the facts of this case are more fully detailed in the Court's Memorandum Opinion of September 30, 2008 upon which the instant motion is based, the Court will not repeat them here. (*See* Docket No. 221).

when it is consonant with justice to do so." *United States v. Jerry*, 487 F.2d 600, 605 (3d Cir. 1973). However, even in the case of interlocutory orders, "courts should grant motions for reconsideration sparingly" because of the interest in finality. *Jairett v. First Montauk Sec. Corp.*, 153 F. Supp. 2d 562, 580 (E.D. Pa. 2001).

In his brief in support of the instant motion, Defendant argues that the Court should reconsider its Memorandum Opinion of September 30, 2008 and dismiss Plaintiff's claims against Defendant Mandel because this Court lacks personal jurisdiction over him. (Docket No. 228). Specifically, Mandel argues that the Court's Memorandum Opinion does not set forth any basis on which this Court can exercise personal jurisdiction over Mandel individually because his contacts with Pennsylvania were made on behalf of Defendant Any Electric LLC ("Any Electric"), which are insufficient for this Court to exercise jurisdiction over Mandel under the "fiduciary shield" doctrine. (Docket No. 228 at 5).

## II. DISCUSSION

### A. *Timing of the Argument*

At the outset, the Court notes the inappropriate timing of the legal argument presented in the instant motion as Mandel did not raise the fiduciary shield doctrine in the underlying motion to dismiss. (*See* Docket Nos. 155-57). Rather, Defendant asserted that the Court could not exercise jurisdiction over him in his capacity as an agent of Any Electric because the court lacked jurisdiction over Any Electric. (Docket No. 157 at 12-13). In support of this proposition, Defendant cited a district court case where the court found it lacked jurisdiction over the chairman of a corporation because it lacked personal jurisdiction over the corporation. *Romann v. Geissenberger Mfg. Corp.*,

865 F. Supp. 255, 263 (E.D. Pa. 1994). Defendant further stated that exercising jurisdiction over him would be improper because Plaintiff had not alleged he had any contacts with Pennsylvania in his individual capacity. (*Id*. at 13). At no point in his brief in support of the underlying motion did Defendant raise the fiduciary shield doctrine or cite to any authority in which the doctrine is discussed. (*See* Docket No. 157).

Plaintiff, in response to the underlying motion, set forth the factual and legal basis upon which it believes this Court can exercise jurisdiction over Mandel. (Docket No. 198 at 20-21). Specifically, Plaintiff argued that Mandel could be held individually liable under the Lanham Act and Pennsylvania law because he was an actual participant in the alleged sales of counterfeit goods, and presented legal authority and evidence in support of that claim. *Id*. However, Defendant made no attempt to raise the fiduciary shield doctrine in response to Plaintiff's arguments on this issue despite having ample opportunity to do so in his reply brief and at oral argument. (*See* Docket Nos. 203 and 242).

A motion for reconsideration is not an opportunity for the parties to present new legal arguments that could have been made in the original motion. *U.S. Claims, Inc. v. Flomenhaft*, 519 F. Supp. 2d 515, 526 (E.D. Pa. 2007). Any arguments regarding the applicability of the fiduciary shield doctrine to Defendant Mandel could and should have been raised in his motion to dismiss, his reply brief, or at oral argument, especially in light of the fact that Plaintiff had timely set forth all of its legal and factual arguments as to this Court's personal jurisdiction over Mandel.

    **B.**    *Applicability of the Fiduciary Shield Doctrine*

Defendant's new legal argument as to applicability of the fiduciary shield in the instant case

would have in no way prevented the Court from denying Mandel's underlying motion to dismiss. Although Defendant in the instant motion sets forth the fiduciary shield doctrine as though it is well-settled law, it is not.[2] While a complete analysis of the doctrine is not necessary for the instant motion, based on the United States Supreme Court's decisions in *Calder v. Jones*, 465 U.S. 783 (1984) and *Keeton v. Hustler*, 465 U.S. 770 (1984), courts of appeal that have addressed this issue have rejected the proposition that due process requires application of the fiduciary shield doctrine.[3] *See Hardin Roller Corp. v. Universal Printing Mach., Inc.*, 236 F.3d 839, 842 (7th Cir. 2001); *Davis v. Metro Prod., Inc.*, 885 F.2d 515, 521 (9th Cir.1989). While there may be a basis for applying the doctrine under state law, neither the Pennsylvania Supreme Court nor the United States Court of Appeals for the Third Circuit has addressed whether the doctrine is applicable in this Commonwealth. *See Bragg v. Linden Research, Inc.*, 487 F. Supp. 2d 593, 602 (E.D. Pa. 2007); *Irons v. Transcor Am.*, Civ. A. No. 01-4328, 2002 U.S. Dist. LEXIS 14149 (E.D. Pa. July 8, 2002)(reviewing district court cases within this circuit that have addressed the issue).

However, even if Defendant had properly raised this argument in his original motion to dismiss, the Court would not have had to predict whether the Pennsylvania Supreme Court would

---

[2] The Court notes that Defendant has made no effort to discuss the fact that the district courts in this circuit are not in agreement as to whether the fiduciary shield doctrine is even applicable in the Commonwealth of Pennsylvania. (*See* Docket Nos. 228 and 237). While this lack of candor about cited legal authority is sadly an all too common phenomenon, it is especially troubling here because Defendant's argument that this Court has committed a manifest error of law is based on a distortion of the true nature of the legal authority to which he cites.

[3] As discussed in the Memorandum Opinion, the only limit on the Pennsylvania long-arm statute is federal due process. (Docket No. 221 at 6-7).

adopt the fiduciary shield doctrine because there are exceptions to the doctrine which are applicable in this case. The United States Court of Appeals for the Third Circuit has held that "[a] corporate officer is individually liable for the torts he personally commits and cannot shield himself behind a corporation when he is an actual participant in the tort." *Donsco, Inc. v. Casper Corp.*, 587 F.2d 602, 606 (3d Cir. 1978)(holding corporate officer individually liable for his participation in a corporation's acts in violation of the Lanham Act and related torts); *see also Elec. Lab. Supply Co. v. Cullen*, 977 F.2d 798, 807 (3d Cir. 1992).[4] Thus, even those district courts within this circuit that have applied the fiduciary shield doctrine have recognized that there is an exception where "the defendant had a major role in the corporate structure, the quality of his contacts with the state were significant, and his participation in the tortious conduct alleged was extensive." *Bragg*, 487 F. Supp. 2d at 603 (E.D. Pa. 2007)(quoting *TJS Brokerage & Co. v. Mahoney*, 940 F. Supp. 784, 789 (E.D. Pa. 1996)). Here, Mandel, by his own admission, was the sole employee of Any Electric. As set forth in the Court's Memorandum Opinion, all of the contacts that give this Court personal jurisdiction over Any Electric were performed by Mandel. (*See* Docket No. 221 at 10-27). Thus, his participation in the alleged tortious conduct could not be more extensive, as he has admitted to being the company's sole employee and the person who reached out to this Commonwealth on behalf

---

[4] The Court also notes that where courts have applied the fiduciary shield doctrine there is an exception where a statutory scheme provides for both personal and corporate liability. *Componentone, LLC v. Componentart, Inc.*, Civ. A. No. 05-1127, 2007 U.S. Dist. LEXIS 18333 (W.D. Pa. Mar. 12, 2007). While Defendant claims that Plaintiff has cited no statutory scheme under which he could personally be held liable, "[a] corporate officer who actually and substantially participates in the corporation's act of trademark infringement is personally liable under section 43(a) [of the Lanham Act] even though he acted as an agent of the corporation rather than on his own behalf." *Elec. Lab. Supply Co. v. Cullen*, 977 F.2d 798, 807 (3d Cir. 1992).

of Any Electric. (*See Id*. at 1 n. 1, 13, 15, 18, 19, 21).

### C. *Applicable Burden of Proof and Sufficiency of Plaintiff's Evidence*

Having been reminded of these facts in Plaintiff's response to the instant motion, Defendant in his reply memorandum makes no attempt to argue that Mandel was not extensively involved in each of the contacts outlined in the Court's Memorandum (nor does he address the appropriateness of raising a new legal argument that could have easily been raised in a motion filed over eight months ago). (Docket No. 237). Rather, Defendant asserts that the law requires Plaintiff to prove Mandel committed a tort in Pennsylvania and that Plaintiff has presented no such evidence. (*Id*. at 1-2). While Defendant claims the Court's Memorandum Opinion is silent on this issue, in doing so, he fails to recognize that these arguments are simply reiterations of arguments previously rejected by this Court when it ruled on the underlying motion. (Docket No. 221 at 22-26). To review, the Court will summarize the key facts and once again address the issue of Plaintiff's burden.

#### 1. **Relevant Facts**

As more fully detailed in the Memorandum Opinion, Plaintiff has presented competent evidence in support of its claims against Mandel, including customs records, Any Electric's business records, and deposition testimony that establish the following facts. (Docket No. 221).

Jiangxi Sunhong Electric Co. ("Sunhong") is a Chinese company that is known to produce and sell counterfeit Square D circuit breakers.[5] (Docket No. 116 at 13). Defendant Scott Electric

---

[5] The Court notes that Defendant has never challenged Square D's characterization of Sunhong. Sunhong is known to have advertised counterfeit Square D products for sale through its website. (Docket 116, Ex. H).

6

("Defendant Scott") is a Pennsylvania corporation. (Docket No. 31). After an inspection of Defendant Scott's inventory by Square D, it was discovered that many of the circuit breakers with the Square D mark in Scott's inventory were, in fact, counterfeit. (Docket No. 198, Ex. F). Defendant Scott has identified Globe Electric Co. ("Defendant Globe") as the source of the counterfeit circuit breakers. (*Id.*). Defendant Globe is owned and operated by members of the Mandel family. (*Id.*, Exs. A, B). Defendant Mandel is the son and brother of two Globe principals. (*Id.*). Defendant Mandel formed Any Electric in 2002 at the suggestion of his father, Joel Mandel. (*Id.*, Ex. B). Any Electric was an internet business that, through its website, offered many of the same products offered by Defendant Globe. (*Id.*, Ex. A). Mandel was the sole employee and majority shareholder of Any Electric. (*Id.*, Ex. B). He alone was responsible for maintaining Any Electric's website, engaging suppliers, taking orders from customers, and arranging for the shipment of products. (*Id.*, Ex. H).

Beginning in 2004 and ending in 2007, Mandel was also employed by Defendant Globe. (*Id.*). While employed by Globe, he simultaneously operated Any Electric as its sole employee. (*Id.*). Any Electric did not maintain its own inventory, and Globe was Any Electric's main supplier. (*Id.*). Customs records indicate that between November 2005 and January 2006, Any Electric received three shipments of circuit breakers from Sunhong. (*Id.*, Ex. G). During the time period in which Globe allegedly sold counterfeit Square D circuit breakers to Scott, Any Electric made sales to residents of Pennsylvania. (*Id.*, Exs. E, K). Any Electric also made sales to residents of the Commonwealth after it received a shipment of circuit breakers from Sunhong. (*Id.*). Two of these sales to residents of Pennsylvania were of Square D circuit breakers. (*Id.*, Ex. E).

## 2. Plaintiff's Burden of Proof

Defendant Mandel ignores these facts and argues that there is "no evidence Steven Mandel committed any tort in Pennsylvania." (Docket No. 237 at 5). In his reply memorandum, Mandel contends the Court should grant the instant motion because Plaintiff has only put forth a "hypothetical allegation that the QOB 250 [circuit breaker sold by Mandel to a resident of Pennsylvania] may or may not be a counterfeit circuit breaker." (*Id.* at 4). In doing so, Defendant fails to recognize the relevance of key facts in the record and distorts Plaintiff's burden of proof.

As noted in the Court's Memorandum Opinion, where, as here, a court does not hold an evidentiary hearing on a motion to dismiss for lack of personal jurisdiction, the plaintiff is entitled to have its allegations taken as true and all factual disputes must be resolved in its favor. *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 323 (3d Cir. 2007); (Docket No. 221 at 24 n. 15). Here, Square D has alleged, *inter alia*, that Mandel sold counterfeit Square D circuit breakers to residents of Pennsylvania, and the aforementioned facts support that claim.

While Defendant in his reply memorandum focuses on Plaintiff's so-called failure to present evidence that the Square D circuit breakers sold by Any Electric are the exact same product that was sold to Defendant Scott, this argument is misplaced. (Docket No. 237 at 4). Plaintiff's claims against all defendants relate to the authenticity of marks on Square D circuit breakers sold in Pennsylvania. Defendant is essentially arguing that because he claims these circuit breakers were not of the same type found to be counterfeit in Defendant Scott's inventory, the Court should accept this as sufficient evidence that he did not sell counterfeit Square D circuit breakers to residents of Pennsylvania. However, the key facts established by Plaintiff are that Mandel sold Square D circuit

8

breakers to residents of Pennsylvania 1) less than a year after Any Electric imported circuit breakers from a known counterfeiter of Square D circuit breakers and 2) during the same time period Defendant Globe, Any Electric's main supplier, sold counterfeit Square D circuit breakers to Defendant Scott. These facts support Square D's claim that Mandel, through Any Electric, sold counterfeit Square D products to residents of this Commonwealth. Viewing the allegations and the described supporting evidence in a light most favorable to Plaintiff, there is a sufficient basis on to exercise personal jurisdiction over Mandel. *See Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 95 n. 1 (3d Cir. 2004).

While Defendant appears to be under the false impression that Plaintiff must produce a "smoking gun" in support of its claims, that is not what the law requires. *See Id*. It is sufficient that Plaintiff has provided this Court with competent evidence that, viewed in a light most favorable to Plaintiff, supports its claims against Mandel. *Id.* Thus, Defendant's argument that there is no evidence Mandel committed a tortious act in Pennsylvania is without merit.[6]

---

6

Defendant has noted that *Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 66 (3d Cir. 1984) "teaches" this Court that it "cannot rely on allegation or speculation" in ruling on a motion to dismiss for lack of personal jurisdiction, and that Plaintiff must present "competent evidence (affidavit or deposition)" in support of its claims (Docket No. 237 at 5). While the Court appreciates this helpful lesson, it notes that Black's Law Dictionary teaches us that "competent evidence" need not come in the form of an affidavit or deposition. Rather, competent evidence is evidence that is relevant, i.e., that tends "to prove or disprove a matter in issue." BLACK'S LAW DICTIONARY 599 (8th ed. 2004). As discussed in the Memorandum Opinion, the relevant evidence in this case has been established by customs records, Any Electric's business records, and deposition testimony. (Docket No. 221 at 22-26). Taken together, this evidence tends to prove that Mandel committed the torts alleged in Plaintiff's Second Amended Complaint, and is, therefore, competent evidence. Moreover, because Mandel's tortious activity can be inferred from this evidence, Defendant's attempt to characterize Plaintiff's evidence as mere allegation or speculation is incorrect as a matter of law and an inappropriate basis for the instant motion. *See Miller Yacht Sales, Inc. v.*

## III. CONCLUSION

Defendant's principal argument in his reply memorandum is that this Court erred in denying the underlying motion because Plaintiff has failed to "prove[]" and "this Court has not found" that Mandel committed a tortious act in Pennsylvania.[7] (Docket No. 237 at 1; Docket No. 228 at 6). In this regard Defendant is correct; this Court has not *found* that the evidence presented by Square D *proves* that Mandel committed the tortious acts alleged by Square D in its Second Amended Complaint, as such a finding would go directly to the merits of this case. Despite Defendant's arguments otherwise, any finding of fact as to whether Mandel actually committed the alleged tortious acts is unnecessary in deciding a 12(b)(2) motion, and would be completely inappropriate given the limited scope of jurisdictional discovery. In fact, had this Court made any finding of fact about the merits of this case, Mandel would have a valid basis upon which to bring a motion for reconsideration; as it stands now, he does not.

Accordingly, Defendant Steven Mandel's Motion for Reconsideration [227] is **DENIED** and Steven Mandel and Any Electric are **ORDERED** to file an Answer to Plaintiff's Second Amended Complaint within five (5) business days of this Order.

---

*Smith*, 384 F.3d 93, 95 n. 1 (3d Cir. 2004).

[7] Defendant's contention that this Court cannot exercise jurisdiction over Mandel unless Plaintiff "*proves* that Mandel committed a tort in Pennsylvania" is without merit and is not supported by the case he cites in support of this proposition. (Docket No. 237 at 2). Rather, that case only notes that it is the plaintiff's burden to prove "that jurisdiction exists. The plaintiff meets this burden and presents a prima facie case for the exercise of personal jurisdiction by establishing with reasonable particularity sufficient contacts between the defendant and the forum state." *D & S Screen Fund II v. Ferrari*, 174 F. Supp. 2d 343, 345 (E.D. Pa. 2001). As more fully detailed in the Court's Memorandum Opinion, Plaintiff has met that burden. (Docket No. 221).

Further, Defendant Steven Mandel is **ORDERED** to adhere to the deadlines set forth in the Court's November 4, 2008 Case Management Order (Docket No. [240]).

s/ *Nora Barry Fischer*
Nora Barry Fischer
United States District Judge

Dated: November 12, 2008

cc/ecf: All parties of record.